PEOPLE, *ex rel.* AUDITOR GENERAL, *v.* INGALLS.

1. Municipal Corporations — Taxation — Statute Exempting From Taxation State and Federal Property Refers to General Taxation Only.

The provisions of 1 Comp. Laws 1915, § 4001, as amended by Act No. 55, Pub. Acts 1925, exempting from taxation Federal and State property, have reference only to general taxation, and do not affect the question of special assessments.

2. Same—Whether Land Assessed For Improvements is Used For Governmental Purposes Material Only When Owned by State Agency.

When land sought to be taxed for special assessments is owned by a municipality or State agency, the question as to whether it is used for governmental purposes is material, but when owned by the Federal or State governments that question has no application.

3. Same—Municipality May Not Assess State Property For Improvements Whether Used For Governmental Purposes or Not.

In the absence of any law authorizing a municipality to

---

[1]Municipal Corporations, 28 Cyc. p. 1117; [2]Id., 28 Cyc. pp. 1117, 1118; [3]Id., 28 Cyc. p. 1117; 18 L. R. A. (N. S.) 451; 32 L. R. A. (N. S.) 303; 25 R. C. L. 865.

levy taxes or assessments against State property, the city of Detroit has no power to levy assessments against the Michigan State fair grounds, owned by the State, to cover the cost of sewers, street paving, sidewalks, and street widening, and it is immaterial whether or not said grounds are used for governmental purposes.

Appeal from Ingham; Carr (Leland W.), J. Submitted October 15, 1926. (Docket No. 105.) Decided May 3, 1927.

Bill by the people of the State of Michigan, on the relation of Oramel B. Fuller, auditor general, against Guy L. Ingalls, city treasurer, and the city of Detroit to set aside special taxes. From a decree for plaintiff, defendants appeal. Affirmed.

*Andrew B. Dougherty*, Attorney General, and *Lincoln E. Bradt*, Assistant Attorney General, for plaintiff.

*Walter Barlow* (*Charles P. O'Neil*, of counsel), for defendants.

BIRD, J. During the years 1921, 1922, 1923, and 1924 the city of Detroit made special assessments against the "Michigan State Fair grounds" in that city to cover the cost of sewers, street paving, sidewalks, and street widening, amounting in all to the sum of $23,222.66. The State Fair lands include about 160 acres of land lying contiguous to Woodward avenue. These lands were, prior to 1921, owned by an incorporated association. On April 6, 1921, the lands were conveyed by the association to the State of Michigan by warranty deed.

Repeated demands were made upon the State for these special taxes. The State authorities denied any liability for such taxes and denied that the city of Detroit had any authority to levy them. To settle the controversy, the auditor general filed this bill on

behalf of the State, praying that the special taxes be declared illegal and void.

The general tax law provides that the following property shall be exempt from taxation:

"*First.* All public property belonging to the United States.

"*Second.* All public property belonging to the State of Michigan." * * * 1 Comp. Laws 1915, § 4001, as amended by Act No. 55, Pub. Acts 1925.

These provisions for exemption of State and Federal property from taxation do not affect the question of special assessments, as these exemptions have reference only to general taxation. *Auditor General* v. *Benevolent Ass'n*, 226 Mich. 170.

The doctrine has been pretty well settled in this State and elsewhere that property owned by the State or by the United States is not subject to taxation unless so provided by positive legislation. And municipalities and State agencies are included in this class when their property is used for public purposes. The reason which supports this doctrine is that, if taxes were permitted to be levied against the sovereign, it would be necessary to tax itself in order to raise money to pay over to itself. This would be an idle thing to do. And, besides, it is rather incongruous that the creature should have the right to tax its creator without its consent. Out of this reason has grown an implied presumption that the State is exempt from all taxes unless the one asserting it can point to some legislation in support of it. We are not aware of any law, nor has any been called to our attention, which authorizes the city of Detroit to levy any tax or assessment against State property. Unless it can do this, its contention must fail. Again, if this tax can be levied against State property, who has authority to pay the tax, and, if it is not paid, who has authority to sell the land to pay the tax?

But counsel say the property which the city of Detroit has assessed is not used for governmental purposes. This is a provision which applies when it is sought to charge a municipality or State agency with taxation, but does not apply to the Federal or State governments. It is of no consequence what use the State makes of its property. The same reason exists for not taxing State property not in governmental use as exists for taxing State property in governmental use. Therefore, the question as to the use made of the fair grounds by the State is immaterial.

That the foregoing rule is in force in Michigan is supported by *City of Big Rapids* v. *Board of Sup'rs of Mecosta Co.*, 99 Mich. 351, where the city authorities sought to enforce a special assessment against the county grounds and buildings. There was no question about the county building being used for governmental purposes. In denying the right of the city to impose the tax, it was said:

"Implied exemptions exist where property is owned and held by the State, its political subdivisions, and its municipalities for governmental purposes. A county is one of the political subdivisions of the State. It would seem to follow that only such burdens of taxation can be imposed upon this property as are expressly provided by law. * * * Whenever the taxing power seeks to impose a tax upon such property it must be able to point to legislative or constitutional authority;" citing authorities.

In *Newberry* v. *City of Detroit*, 164 Mich. 410 (32 L. R. A. [N. S.] 303), the special assessment was permitted because levied against a public park not used for governmental purposes.

In *Auditor General* v. *MacKinnon Boiler & Machine Co.*, 199 Mich. 489, the special assessment was permitted because the title to the vacant lots had been conveyed to the Regents of the University, in trust for the University, and they were not used for governmental purposes.

Upon the question of implied exemptions, Cooley on Taxation (2d Ed.), p. 172, makes this observation:

"Some things are always presumptively exempted from the operation of general tax laws, because it is reasonable to suppose they were not within the intent of the legislature in adopting them. Such is the case with property belonging to the State and its municipalities, and which is held by them for governmental purposes. All such property is taxable if the State shall see fit to tax it; but to levy a tax upon it would render necessary new taxes to meet the demand of this tax, and thus the public would be taxing itself in order to raise money to pay over to itself, and no one would be benefited but the officers employed, whose compensation would go to increase the useless levy. It cannot be supposed that the legislature would ever purposely lay such a burden upon public property, and it is therefore a reasonable conclusion that, however general may be the enumeration of property for taxation, the property held by the State and by all its municipalities for governmental purposes was intended to be excluded, and the law will be administered as excluding it in fact. The grant, therefore, in general terms, to a city of the power to tax will not be held to confer power to tax State or county property."

4 Dillon on Municipal Corporations (5th Ed.), § 1396, says:

"The sound principle is that property owned by the United States, by a State or by a municipality for public uses, is not subject to be taxed unless so provided by positive legislation."

Other jurisdictions are in accord with this doctrine. The city of Worcester, Massachusetts, sought to place against the courthouse of Worcester county an assessment for local improvement. The right was denied, the court saying in part:

"The property of the Commonwealth is exempt from taxation because, as the sovereign power, it receives the taxation through its officers, or through the municipalities it creates, that it may from the means thus furnished, discharge the duties and pay the expenses

of government.   Its property constitutes one of the instrumentalities by which it performs its functions. As every tax would to a certain extent diminish its capacity and ability, we should be unwilling to hold that such property was subject to taxation in any form, unless it were made so by express enactment or by clear implication." *Worcester County* v. *Worcester,* 116 Mass. 193 (17 Am. Rep. 159).

The city of Des Moines attempted to burden the State Capitol and grounds with a special assessment. The court held against the city, saying:

"It is apparent, we think, from a casual reading of the statute, that the legislature never intended to confer upon cities the authority contended for in this case.   It is not conferred in express terms by any provision of the act.   If it had been the intention to confer such power, we would naturally expect to find some provision making it the duty of some officer or agent of the State to pay such assessment when made, and making the necessary appropriations for meeting such charges when they accrued.  *  *  *  We are very clear that the power to subject the property of the State to assessments of this character does not exist in the absence of statutes conferring it." *Polk County Savings Bank* v. *State,* 69 Iowa, 29 (28 N. W. 416).

Our conclusion is that the special taxes levied by the city of Detroit against the Michigan State Fair lands were without authority of law, and, therefore, are illegal and void.

The decree of the trial court will be affirmed.   No costs will be allowed.

SNOW, STEERE, FELLOWS, WIEST, and MCDONALD, JJ., concurred.

SHARPE, C. J. (*concurring*).   I think it may fairly be said that counsel for the defendant concedes that if the property on which the special assessments were levied is used by the State for governmental purposes it is not subject to the taxes imposed.   Education in

this State is clearly a governmental function. The policy of the State from an early day, as evidenced by its Constitution and laws, clearly indicates an intention not to restrict the means provided for the diffusion of education to the class rooms of the university, colleges, and schools. The Constitution of 1835 contained the following:

"The legislature shall encourage, by all suitable means, the promotion of intellectual, scientifical, and agricultural improvement."

The Constitution of 1850 contained a similar provision. In our present one (art. 11, § 10), the duty is devolved upon the legislature to maintain, not only our university, colleges, and normal schools, but also such "other educational institutions as may be established by law."

Legislative provision was early made for the organization of State, county, and town agricultural societies, and providing for a local tax in support of the latter. In 1915, by Act No. 294 (2 Comp. Laws 1915, § 7869 et seq.), the "Michigan agricultural fair commission" was created and provision made for the distribution of moneys appropriated by the legislature to aid in the payment of premiums awarded at annual fairs. The Federal government has provided for cooperative extension work on the part of the agricultural colleges of the States, and our State legislature has met the requirements of the Federal act by annual appropriations therefor (Act No. 308, Pub. Acts 1923).

Section 4 of Act No. 13 of the Public Acts of 1921 (Comp. Laws Supp. 1922, § 169 [4]), under which the State department of agriculture was created, vests the control of all lands and other property owned by the State "for the purpose of holding and conducting agricultural and industrial fairs, and for other agricultural purposes" in that department. It further provides:

"An annual State fair, at the city of Detroit which shall have for its main purpose the exploiting and encouragement of improved methods in agricultural pursuits, is hereby authorized."

A board of managers is provided for in the act, and an annual appropriation made, a part of which is to be used for the payment of premiums, and a part for maintenance and operation. That the purpose is educational admits of no doubt. The extension courses, and those in agriculture and kindred subjects, now provided for, are evidence of an intent to combine the practical with the theoretical in our educational work, and any provision made by the legislature for the purpose of affording instruction to those engaged in agricultural and kindred pursuits is quite as much a function of government as the erection of buildings and the employment of instructors in our university, colleges, and schools.

It follows that the grounds and buildings owned by the State and set aside for the holding of a State fair are used for a governmental purpose, and are not subject to the special assessment levied against them by the city.

The fact that such grounds and buildings are used for other purposes occasionally is in no way controlling. Such use is but incidental. The charge made therefor enables the officials to operate the fair at a less expense to the State, but in no way changes the purpose for which the property was acquired and is being maintained.

It is not necessary to decide whether such a tax may be lawfully levied where property owned by the State is not used for governmental purposes, and I do not think we should do so in this case.

I concur in the affirmance of the decree entered.

CLARK, J., concurred with SHARPE, C. J.