CITY OF DETROIT v. STATE OF MICHIGAN

1. TAXATION—STATE'S LIABILITY—PROPERTY TAX—SOVEREIGN IMMUNITY.
    All public property belonging to the state is exempt from taxation on the basis of sovereign immunity unless the one asserting nonexemption can point to some legislation in support of its position (MCLA § 211.7).

2. TAXATION—STATE'S LIABILITY—INTEREST.
    The state is not liable for interest on taxes except where, expressly or by reasonable construction of a contract or statute, it has placed itself in a position of liability.

3. TAXATION—STATE'S LIABILITY—PROPERTY TAX—BASE TAX.
    The state is required by statute to pay the base tax on property which it acquires after tax date whether before or after levy date (MCLA § 211.40).

4. TAXATION — STATE'S LIABILITY — PROPERTY TAX — INTEREST — PENALTIES — LEVY DATE.
    The state is required by statute to pay not only base taxes on property which it acquires but also interest and penalties if the base taxes are paid late, regardless whether the interest and penalties accrued before or after the levy date, because the state assumes the status of the former owner as of tax day for all taxing purposes (MCLA § 211.40).

REFERENCE FOR POINTS IN HEADNOTES
[1-7] 51 Am Jur, Taxation § 557 et seq.

5. Taxation—Property Tax—"Taxable Status"—Definition.

Statutory phrase that the taxable status of persons and of real and personal property shall be determined as of each December 31, the tax day, means the status of persons in relation to a particular piece of property (MCLA § 211.2).

6. Taxation—Property Tax—"Public Agency"—Definition.

The term "public agency" as used in the statute governing the proration of taxes on property acquired by purchase or condemnation is broader than "governmental agency" and includes quasi-public corporations (MCLA § 211.2).

7. Taxation—Public Agency's Liability—Property Tax—Interest—Penalties.

"General property taxes" as used in the statute governing property taxes payable by public agencies includes penalties and interest; therefore, the statutory liability of a public agency for all general property taxes levied on or after the date title passes to it, means taxes, penalties, and interest (MCLA § 211.2).

Appeal from Court of Claims, William John Beer, J. Submitted Division 2 at Lansing, October 7, 1970. (Docket No. 8665.) Decided March 24, 1971. Leave to appeal denied June 18, 1971, 385 Mich 757.

Complaint by City of Detroit and its City Treasurer, against the State of Michigan, the State Treasurer, and the Department of State Highways for delinquent real property taxes and interest. Judgment for plaintiffs. Defendants appeal. Affirmed.

*Michael M. Glusac,* Corporation Counsel, and *Robert Reese, Julius C. Pliskow,* and *Arthur Yim,* Assistants Corporation Counsel, for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Louis J. Caruso* and *Karl S. Vasiloff,* Assistants Attorney General, for defendants.

Before: LEVIN, P. J., and T. M. BURNS and J. E. HUGHES,* JJ.

J. E. HUGHES, J.   The facts are stipulated as follows:

"1. Certain parcels of real property in the City of Detroit were acquired by the Department of State Highways between the tax date, December 31, 1966, and levy date, July 15, 1967, said parcels being acquired either by condemnation or purchase.

"2. On tax date, December 31, 1966, said parcels were privately owned and subject to taxation for 1967.

"3. The Department of State Highways acquired title to said parcels subject to 1967 real property taxes.

"4. The Charter (Title VI, Chapter 4) of Detroit provides that said real property taxes became due at the office of the City Treasurer on July 15, 1967, and that one half of such taxes may be paid on or before August 15 and the second half on or before January 15, 1968, or if same were paid in full, then on or before August 31, 1967.

"5. The Charter of Detroit further provides for imposition of interest at the rate of one half (1/2) of one percent per month for such taxes which have not been timely paid.

"6. The Department of State Highways did offer to pay the base amounts of the taxes, without interest, on the parcels involved herein in March and April of 1968; that the respective checks were returned by the City of Detroit Treasurer to the Department of State Highways.

"7. Liability is admitted by defendants only for the base amounts of taxes on the respective parcels of real property involved herein."

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Judgment in favor of plaintiffs in the amount of $15,332.31 (delinquent taxes plus interest) was signed by the Honorable William J. Beer, Oakland County Circuit Judge sitting in the Court of Claims.

The sole issue to be answered is: When the state acquires land by either purchase or condemnation for public purposes between tax date (December 31) and levy date (July 15) and the payment of the taxes is late, is the state liable for interest as well as for the taxes?

For the purpose of this opinion, at least, we see no need to make a distinction between the terms "penalties" and "interest". Exempted from taxation is "all public property belonging to the state of Michigan * * * ". MCLA § 211.7 (Stat Ann 1960 Rev § 7.7). *People, ex rel. Auditor General,* v. *Ingalls* (1927), 238 Mich 423, on the basis of sovereign immunity, holds this to be the law of the state "unless the one asserting it [non-exemption] can point to some legislation in support of it". There appears to be no Michigan authority on this question; however, it is certainly the general rule, also based on sovereign immunity, that a state is not liable for interest "except where, expressly or by reasonable construction of a contract or statute, it has placed itself in a position of liability". 24 ALR2d 928, 974, § 16. We accept this to be the law in Michigan.

The Attorney General concedes that our statutes have for some time contained clear authorization requiring the payment by the state of the base tax on property acquired by the state after tax date whether before or after levy date. This was accepted to be the law when the Attorney General

issued an opinion on October 23, 1961,[1] which contained the following language:

"No statutory provision exists which grants the Michigan State Highway Department an exemption from the payment of interest and penalties upon delinquent taxes and special assessments."

The state concedes that this opinion is good law today, admitting that base taxes are due in either case but claiming that this opinion of 1961, so far as liability for penalties and interest is concerned, applies only to the situation where the state acquires property after levy date. This authority for so limiting the 1961 opinion is an Attorney General's opinion issued November 27, 1967,[2] which says that that is what the 1961 opinion held. The 1967 opinion holds that under circumstances that exist in the instant case—acquisition between tax date and levy date—no interest or penalties can be charged the state for the late payment of the levied taxes. The City of Detroit claims that the property concerned in the 1961 opinion was acquired between tax date and levy date as in the case before us. Be that as it may, we do not deem the important aspect of the 1961 opinion to be when the land was acquired by the state, but rather the reason behind the opinion, that is, from where the authorization requiring the state to so pay came. The state concedes that this authority is found in MCLA § 211.40 (Stat Ann 1960 Rev § 7.81), the relevant portion of which then and now reads as follows:

"Sec. 40. Notwithstanding any provisions in the charter of any city or village to the contrary, all taxes shall become a debt due to the township, city,

---

[1] Letter opinion to John C. Mackie, State Highway Commissioner, October 23, 1961.

[2] OAG, 1967–1968, No 4615, p 154 (November 27, 1967).

village and county from the owner or person otherwise to be assessed on the tax day provided for in sections 2 and 13 of this act, and the amounts assessed on any interest in real property shall, on the first day of December, for state, county, village or township taxes or upon such day as may be heretofore or hereafter provided by charter of a city or village, become a lien upon such real property, and the lien for such amounts, and for all interest and charges thereon, shall continue until payment thereof."

At the time, MCLA § 211.2 (Stat Ann 1960 Rev § 7.2) [§ 2 of the General Property Tax Act] consisted of only two paragraphs the first of which is not material and the second of which in 1961 read:

"The taxable status of persons and real property after January 1, 1958, should be determined as of December 31, 1958, and each December 31 thereafter, which shall be deemed the tax day, any provisions in the charter of any city or village to the contrary notwithstanding. No assessing officer shall be restricted to any particular period in the preparation of the assessment roll but may survey, examine or review properties at any time prior to or after said tax day."

Outside of the removal of certain surplus language and the addition of "personal property", this paragraph reads the same and has exactly the same meaning now as it had then.

Under this statutory setting, the state concedes clear authority not only requiring it to pay the base taxes when property is acquired between tax day and levy day, but also for the payment of interest and penalties if the base taxes are paid late. The interest and penalties that the state concedes it must pay are not only those which accrued prior to acquisition but all that accrue thereafter until the taxes are paid. The state concedes that this author-

ity is still found in § 40 without reference to either paragraph 3 (added in 1966) or paragraph 4 (added in 1968) of § 2. We think this to be most significant as the 1967 opinion seems to completely ignore § 40 and deals with the problem as simply an interpretation of § 2 alone, apparently looking on paragraph 3 of the section as the basis of authority obligating the state to pay the base tax. This paragraph reads as follows:

"Notwithstanding any provision to the contrary in any law, when real property is acquired for public purposes by purchase or condemnation, all general property taxes, but not penalties, levied during the 12 months immediately preceding, but not including, the day title passes to the public agency shall be prorated in accordance with this paragraph (or section). The sellor [sic] or condemnee is responsible for the portion of taxes from the levy date or dates to, but not including, the day title passes and the public agency is responsible for the remainder of such taxes. If the date that title will pass cannot be ascertained definitely and an agreement in advance to prorate taxes is desirable, an estimated date for the passage of title may be agreed to. In the absence of such agreement, the public agency shall compute the proration of taxes as of the date title passes. The question of proration of such taxes shall not be considered in any condemnation proceeding. As used in this paragraph (section) 'levy date' means the day on which taxes become due and payable. In addition to the portion of taxes for which the public agency is responsible under the provisions of this paragraph (section), the public agency is also responsible for all general property taxes levied on or after the date title passes and before the property is removed from the tax rolls."[3]

---

[3] This act was amended in 1968, but the amendment is not here material.

The Attorney General then seems to try to lift himself by his own bootstraps by saying that when the legislature amended § 2 in 1968 by making certain minor modifications in language in paragraphs 2 and 3 and adding paragraph 4, the legislature adopted the Attorney General's 1967 interpretation of this section.

In any case, thereby arises the apparent difference between the approach of the two Attorney General's opinions. The 1961 opinion says that the obligation to pay base taxes arises out of § 40 and, there being no statutory limitation elsewhere, the state owes interest and penalties when the taxes are paid late. The 1967 opinion, apparently assuming the basic authority to be in paragraph 3 (added in 1966), merely interprets this section and arrives at the conclusion that the state has an obligation to pay base taxes only.

The Attorney General argues that this is not the case at all, but rather that under § 40, the state assumes the status of the property owner and must, therefore, pay the base tax; however, penalties and interest arise out of the lien that attaches on levy date and so property acquired before levy date requires the state to pay only base taxes as it assumes only the "personal debt" of the prior owner. But when property is acquired after levy day, the taxes plus interest and penalties (accrued and owing) because the lien having attached, are now "debts of the land itself" which must be assumed.

We fail to find this fine distinction in § 40. If, as § 40 and § 2 existed prior to 1966, the statutes clearly required the state to pay base taxes because it assumed the status of the former owner as of tax day, it would appear equally clear that it assumed that status for all taxing purposes and we believe that is exactly what the 1961 opinion rightly

held. Paragraph 2 of § 2, which has remained virtually unchanged since 1961, states that "The taxable status of persons and real and personal property shall be determined as of each December 31, which shall be deemed the tax day * * * ." It would appear to us that the legislature meant the status of persons in relation to a particular piece of property, which property then became so impressed. Any other interpretation of this language would create uncertainty, if not chaos, particularly when the possible variations that may arise under MCLA § 211.7 (Stat Ann 1960 Rev § 7.7) are considered.

Further, we believe that paragraphs 3 and 4 of § 2 are concerned with the respective rights between the seller or condemnee and the "public agency" or buyers as to how tax responsibility should be prorated between them, and in no way modify or change the obligation arising under § 40. We believe the term "public agency" to have been used advisedly by the legislature as a broader term than "state" or even "governmental agency" in that quasi-public corporations, such as railroads, power companies, etc., have authority to acquire land by purchase or condemnation for public use. The narrow interpretation that the state apparently seeks would result in there now being a statutory formula for the proration of taxes when land is acquired for public use by the state (and likewise a plan to deal with the private real estate transaction), but none when land is acquired by condemnation by a quasi-public corporation. We do not believe that the legislature intended this result.

Nevertheless, assuming that we are wrong in our analysis to this point, we still cannot reach the same conclusion as the Attorney General in his interpretation of § 2 alone. We believe that as used in

this section, the term "general property taxes" is the broad term which includes penalties and interest. Therefore, when the legislature said that the public agency is responsible for "all general property taxes levied on or after the date title passes," it meant taxes, penalties, and interest; in this connection we note that it was thought necessary to limit the term "general property taxes" when earlier used in the section by qualifying it to read "general property taxes, *but not penalties*" (emphasis supplied) to make it clear that the state was not to be responsible for costs (interest and penalties), created by the laxity of the former owner in paying his taxes, in prorating tax responsibility as between the two parties to the transaction.

In sustaining the award of the Court of Claims, we offer, in paraphrased form, the same advice to the State Highway Commission that was given to them in 1961 by the then Attorney General, Paul L. Adams: "The problem may be easily avoided by timely payment of taxes."

Affirmed.

All concurred.