## PEOPLE v WARD

Docket No. 112395. Decided May 18, 1999. On application by the people for leave to appeal, the Supreme Court, in lieu of granting leave, reversed the judgment of the Court of Appeals and reinstated the defendant's conviction. Rehearing denied 460 Mich 1204.

Michael Ward pleaded guilty of OUIL, second offense, and of operating a motor vehicle while his license was suspended or revoked. Fourteen months later, after being charged in an unrelated case with OUIL, third offense, and driving with a suspended or revoked license, second offense, the defendant moved to set aside his OUIL 2d plea, alleging that the plea lacked a factual basis and that the district court had failed to comply with the requirements for accepting a plea under MCR 6.610(E). The 52-1 District Court, Brian MacKenzie, J., set aside the conviction, determining that the failure to question the defendant concerning the offense or to obtain a factual basis for the plea, along with the failure to advise the defendant of any of his rights, constituted a deviation affecting substantial rights. The court further held that the motion to withdraw the plea was not a collateral attack. The Oakland Circuit Court, Deborah G. Tyner, J., denied leave to appeal. The Court of Appeals, HOOD, P.J., and SAAD and YOUNG, JJ., also denied leave to appeal (Docket No. 197266). In lieu of granting leave to appeal, the Supreme Court remanded the case to the Court of Appeals for reconsideration as on leave granted. 454 Mich 894 (1997). On remand, the Court of Appeals, REILLY and G. S. ALLEN, JJ. (DOCTOROFF, P.J., dissenting), affirmed, concluding that defendant's challenge to his plea-based conviction was a direct attack, and that the district court did not abuse its discretion in granting defendant's motion to set aside his plea-based conviction. 230 Mich App 95 (1998) (Docket No. 203408). The people appeal.

In an opinion per curiam, signed by Chief Justice WEAVER, and Justices BRICKLEY, TAYLOR, CORRIGAN, and YOUNG, the Supreme Court *held*:

The district court abused its discretion in setting aside the defendant's plea.

1. MCR 6.610(E)(7) requires a motion to set aside the plea before issues regarding plea procedure are raised on appeal. A

delay in bringing such a motion is a factor that the trial court must consider in determining whether to grant relief. It is entirely appropriate that a much higher standard be applied to a defendant who seeks relief from a judgment long after the conviction.

2. In this case, the request to set aside the defendant's conviction for OUIL 2d came fourteen months after that conviction, and only after the defendant was charged with the felony offense of OUIL 3d in part predicated on this OUIL 2d conviction. The defendant pleaded guilty as charged at the misdemeanor arraignment in the absence of the prosecutor. He was represented by experienced counsel at the OUIL 2d plea. Despite the obvious deficiencies in the plea-taking procedure, counsel raised no objection.

3. Permitting a defendant charged with OUIL 3d to collaterally attack a prior plea-based OUIL conviction fourteen months later in effect would grant the defendant a license to voluntarily enter a guilty plea, accept its consequences, and then, when once again convicted of driving while intoxicated, attempt to avoid the effect of the prior conviction through a legal artifice. Because the validity of the plea in this case was contested merely out of subsequent sentencing concerns, the defendant's ability to directly attack his OUIL 2d conviction was foreclosed when he was arrested and charged with OUIL 3d.

Reversed.

Justice CAVANAGH, joined by Justice KELLY, dissenting, stated that the difficulty in this case results from the fact that the district court rules lack a time limit for bringing a motion to withdraw a plea. While the defendant's challenge was a direct attack on his conviction, and the majority agrees it was technically correct, the majority seems to suggest that, if not brought within some as yet undefined expedient time frame that is not long delayed, all postconviction challenges are simply collateral.

While no court wishes to see a just conviction vacated, in this case, the conviction was obtained by a plea that was woefully deficient and wholly unable to stand on its own. Further, it is not suggested that there would be any serious impediments to the prosecutor obtaining a conviction on this charge were the plea to be withdrawn. Rather than recognize this and the perhaps broadreaching and thus far undetermined scope of its opinion, the majority simply selects the easiest and least supported path toward a particular result.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *David Gorcyca*, Prosecuting Attorney, *Daniel Lemisch*, Chief, Appellate Divi-

sion, and *Marilyn J. Day*, Assistant Prosecuting Attorney, for the people.

*John D. Lazar* for the defendant-appellee.

Amicus Curiae:

*Norman W. Donker*, President, *William A. Forsyth*, Prosecuting Attorney, and *Timothy K. McMorrow*, Chief Appellate Attorney, for Prosecuting Attorneys Association of Michigan.

PER CURIAM. In this case, we consider whether defendant, who was represented by retained counsel, should be permitted to set aside a defective OUIL 2d plea fourteen months after it was entered where (1) defendant's subsequent OUIL arrest and desire to avoid sentencing as an OUIL 3d offender obviously motivated the motion, and (2) retained counsel, in the absence of the prosecutor, knowingly entered a woefully defective plea at arraignment without bringing the defects to the court's attention. Thus, retained counsel preserved the strategic possibility of setting aside the plea if defendant were ever charged with another OUIL offense.

As explained below, we answer this question in the negative. Unlike the dissent, we decline to allow this transparent manipulation of the system. We will not allow defense counsel to harbor plain error as a parachute in the event of a subsequent OUIL charge. A contrary ruling would provide no incentive to defense counsel to ensure that valid pleas are taken; in fact, such a ruling would encourage counsel to enter pleas that do not comply with the court rules.

On February 1, 1995, defendant pleaded guilty of OUIL 2d,[1] and of operating a motor vehicle while his license was suspended or revoked.[2] Fourteen months later, after being charged with OUIL 3d,[3] and driving with a suspended or revoked license, second offense,[4] in an unrelated case, the defendant moved to set aside his OUIL 2d plea. Defendant alleges that the plea lacked a factual basis and that the district court had failed to comply with the requirements for accepting a plea under MCR 6.610(E). The district court granted the motion, and the circuit court affirmed.

On remand from this Court, the Court of Appeals affirmed.[5] The prosecutor has filed an application for leave to appeal to this Court.[6] We conclude that the district court abused its discretion in setting aside defendant's plea, and reverse.

I

On January 19, 1995, defendant was arrested for drunk driving and driving with a suspended license. On February 1, 1995, with the assistance of retained counsel, he was arraigned in the 52-1 District Court. At the arraignment, defendant pleaded guilty as charged of operating a motor vehicle under the influence of liquor, second offense, and operating a motor vehicle with a suspended or revoked license. The

---

[1] MCL 257.625(7)(b); MSA 9.2325(7)(b).

[2] MCL 257.904(1)(a); MSA 9.2604(1)(a).

[3] MCL 257.625(7)(d); MSA 9.2325(7)(d).

[4] MCL 257.904(1)(b); MSA 9.2604(1)(b).

[5] 230 Mich App 95; 583 NW2d 495 (1998).

[6] The prosecutor also filed a motion for immediate consideration and the Prosecuting Attorneys Association of Michigan filed a motion for leave to file a brief as amicus curiae. Those motions are granted.

record reflects that no prosecutor was present for the arraignment and guilty plea.[7]

The district judge accepted the plea without observing the requirements of MCR 6.610(E). Specifically, the judge did not question defendant and did not determine that the plea was understanding, voluntary, and accurate. Likewise, he did not inform defendant of the maximum sentence or of the rights he was giving up by offering the plea. When defense counsel announced the decision to plead guilty, the judge accepted the plea and immediately imposed the sentence of two years probation, with thirty days to be served in jail, together with fines and costs.[8]

On February 3, 1996, defendant was again arrested for drunk driving and charged in the 52-1 District Court with operating a motor vehicle under the influence of liquor, third offense, and operating a motor vehicle with a suspended or revoked license, second offense. One of the prior offenses used to support the OUIL 3d charge was defendant's February 1, 1995, guilty plea conviction of OUIL 2d in the 52-1 District Court.

Approximately two months after he was charged with OUIL 3d, defendant moved to withdraw the 1995 guilty plea conviction on the ground that the judge's deviation from MCR 6.610(E) affected his substantial rights. The prosecutor contended that the motion to withdraw was filed merely to extricate defendant

---

[7] While the state's presence would have plausibly rectified the deficient plea, we are aware of no court rule that compels the prosecutor's presence at misdemeanor arraignments where defendant pleads guilty as charged.

[8] The judge actually imposed a jail term of six months, but suspended the last five months on various conditions.

from the charges of OUIL 3d. The prosecutor further argued that the fourteen-month delay made the motion an impermissible collateral attack on the 1995 conviction.

The district judge set aside defendant's 1995 guilty plea conviction. The court determined that the failure to question defendant concerning the offense or to obtain a factual basis for the plea, along with the failure to advise defendant of any of his rights, constituted a deviation affecting substantial rights. The district court further held that the motion to withdraw the plea was not a collateral attack, since it occurred in the same court in which the conviction was entered, not in a different case in which a subsequent charge was being prosecuted.

The prosecutor appealed to Oakland Circuit Court. On July 31, 1996, the circuit court denied leave to appeal. The prosecutor filed an application for leave to appeal to the Court of Appeals. On November 22, 1996, the Court of Appeals denied leave to appeal.

The Oakland County prosecutor filed an application for leave to appeal to this Court. In lieu of granting leave to appeal, we remanded the case to the Court of Appeals for reconsideration as on leave granted. We directed the Court of Appeals to consider whether the district court properly set aside the 1995 guilty plea conviction of OUIL 2d. 454 Mich 894 (1997).

II

On remand, the Court of Appeals saw the critical question as whether the attack on the OUIL 2d plea was "collateral" or "direct." The majority examined

our decision in *People v Ingram*, 439 Mich 288, 294-295; 484 NW2d 241 (1992), in which we said:

> [The] failure of a plea-taking court to adhere to applicable plea-taking requirements during the plea proceeding does not provide a defendant the opportunity to challenge by collateral attack. The validity of such a plea, where the defendant was represented by an attorney when entering the plea or when the defendant intelligently waived the right to counsel, including the right to court-appointed counsel if indigent, is unassailable.

The Court of Appeals majority concluded that if the defendant's attack on the February 1995 plea-based conviction was collateral, as opposed to direct, the defendant was not entitled to have it set aside. It noted that in *Ingram*, we defined "collateral attacks" as "those challenges raised other than by initial appeal of the conviction in question." 439 Mich 291, n 1. The Court found defendant's challenge direct rather than collateral, explaining:

> (1) it was made in the case instituted for the specific purpose of prosecuting the charge at issue, compare *Ingram*, *supra*, and [*People v*] *Howard* [212 Mich App 366; 538 NW2d 44 (1995)], and (2) it was a necessary step in the process of filing an appeal to the circuit court. [230 Mich App 95, 100-101; 583 NW2d 495 (1998).]

The Court reasoned that a motion to withdraw the plea is a prerequisite to appealing the plea-based conviction. MCR 6.610(E)(7)(a). There is no time limit in the rule for filing such a motion. Further, the Court of Appeals noted that MCR 7.101(B)(1) provides a twenty-one-day period for appeals from district to circuit court. Defendant's motion was not filed within that period. However, under MCR 7.103, the circuit

court may grant leave to appeal from the district court after the time for taking an appeal has expired.

Thus, the Court reasoned that if the defendant could challenge his plea-based conviction only on direct appeal, then to prevent him from taking one of the steps necessary to do so would defy logic. The Court concluded:

> Because we conclude that defendant's challenge to his plea-based conviction was a direct attack, and the prosecution does not otherwise contest the merits of the district court's decision to grant defendant's motion, we hold that the district court did not abuse its discretion in granting defendant's motion to set aside his plea-based conviction. [230 Mich App 102.][9]

The dissenting judge in the Court of Appeals said that although the defendant is challenging his conviction on a direct appeal rather than collateral attack, it was an appeal that would never have been brought had the defendant not been charged as a third offender. The dissent found this unacceptable:

> This Court has previously suggested that long-delayed direct attacks on plea-based district court convictions will

---

[9] The Court of Appeals recognized the potential for manipulation of the system that such a rule permits. See *People v Nydam*, 165 Mich App 476, 479; 419 NW2d 417 (1987). However, it said if any criticism is to be assigned "it should fall most squarely on the district court that took the defective plea in the first place." 230 Mich App 103. It noted the following from *People v Erwin*, 212 Mich App 55, 65-66; 536 NW2d 818 (1995):

> OUIL offenses are exceptional inasmuch as the Legislature has provided for augmented punishment of a simple misdemeanor for repeat offenders up to and including felony treatment. It is therefore of special importance that courts follow regular procedures in accepting misdemeanor pleas to these offenses and carefully consider the potential consequences of such pleas for subsequent felony offenses.

be deemed collateral and therefore must surmount a high threshold before judicial relief will be considered. *People v Erwin*, 212 Mich App 55, 66; 536 NW2d 818 (1995). The present case involves precisely the sort of delayed direct attack that should be deemed collateral in the interest of "considerations of finality and administrative consequences [which] must become part of the process with which we assure the achievement of proceedings that are consistent with the rudimentary demands of fair procedure." *People v Ingram* [*supra* at 293-294]. [230 Mich App 104.]

### III

The Court of Appeals characterization of defendant's request to withdraw his plea as a "direct attack" on his OUIL 2d conviction is technically correct. The rule governing motions to withdraw pleas does not set a time limit. MCR 6.610(E)(7).[10] However, the rule does require a motion to set aside the plea before issues regarding the plea procedure are raised on appeal.

Because the offense occurred after December 24, 1994, the defendant had no appeal of right from his plea-based conviction.[11] Thus, defendant's appellate rights are governed by MCR 7.103(A), which provides:

Availability. The circuit court may grant leave to appeal from a trial court or municipal court when

(1) no appeal of right exists, or

(2) the time for taking appeal under MCR 7.101(B)(1) has expired.

---

[10] This is in contrast to the rule applicable to circuit court pleas, which permits such motions only within the time for filing an application for leave to appeal. MCR 6.311(A).

[11] Const 1963, art 1, § 20, as amended by the voters at the 1994 general election.

Subrule (B)(1) provides the time for filing an application:

> Except when another time is prescribed by statute, an application for leave to appeal must be filed within 21 days after the entry of the judgment or order appealed from.

The only provision regarding late appeals is MCR 7.103(B)(6), which suggests that late appeals are allowed, but sets no time limit:[12]

> An application under subrule (A)(2) or an application that is not timely under subrule (B)(1), must be accompanied by an affidavit explaining the delay. The circuit court may consider the length of and the reasons for the delay in deciding whether to grant the application.

We adopt the rationale of *People v Erwin, supra.* Long-delayed "direct" attacks on convictions may be viewed as collateral attacks. However, regardless of the label one affixes to such long-delayed challenges, it is entirely appropriate that a much higher standard be applied to a defendant who seeks relief from a judgment long after the conviction. Just as an appellate court is to consider the length of and reasons for delay in deciding whether to grant leave to appeal, the delay in bringing such a motion is a factor that the trial court must consider in determining whether to grant relief. In such cases, our concerns for finality and the efficient and effective administration of justice grow in importance. *People v Ingram, supra.*

In the circumstances of this case, we hold that the district court abused its discretion in setting aside the

---

[12] This is in contrast to MCR 7.205(F), which allows the Court of Appeals to grant late appeals if the application is filed within twelve months of the judgment or order on the merits.

defendant's conviction for OUIL 2d. The request came fourteen months after the conviction, only after the defendant was charged with the felony offense of OUIL 3d, in part predicated on this OUIL 2d conviction. Defendant was represented by experienced, competent counsel at the OUIL 2d plea.[13] Despite the obvious deficiencies in the plea-taking procedure, counsel raised no objection.[14] This raises the obvious inference, suggested by the Court of Appeals majority, that what took place was a wilful manipulation of the system. As that Court noted, pointing to *People v Nydam*, 165 Mich App 476; 419 NW2d 417 (1987), permitting a defendant charged with OUIL 3d to collaterally attack a prior plea-based OUIL conviction several years later " 'would in effect grant to a defendant a license to lie in the weeds, voluntarily enter a guilty plea, accept the consequences thereof, and then (when once again convicted of driving while intoxicated) attempt to avoid the effect of his prior conviction through a legal artifice.' " 230 Mich App 102. Accordingly, because the validity of the plea was contested merely out of subsequent sentencing concerns, defendant's ability to directly attack his OUIL 2d conviction was foreclosed when he was arrested and charged with OUIL 3d.

Reinstating the defendant's conviction is consistent with our decision in *People v Ingram, supra.* The two

---

[13] Counsel's knowledge and experience handling drunk driving cases is evidenced by his significant publications in the legal community. Counsel has authored several continuing education publications, including *Defense of Drunk Driving Cases in Michigan, Drunk Driving Law and Practice* and the *1998 Drunk Driving Defense Update.*

[14] Cf. MCR 6.302(E). The same attorney represented defendant at the OUIL 2d and OUIL 3d proceedings, although substitute counsel was utilized to make the motion to withdraw the plea.

cases differ somewhat in that the appeal in *Ingram* came to this Court as a challenge to the defendant's circuit court conviction for OUIL 3d. However, the critical question was virtually identical to that presented here. The instant Court of Appeals panel accurately summarized the *Ingram* facts as follows:

> The defendant in *Ingram* was charged with OUIL 3d (Case 5) based on four underlying plea-based OUIL convictions (Cases 1-4). After the circuit court ruled that two of the underlying convictions (Cases 1 & 2) were infirm because of the defendant's lack of counsel, the defendant entered a conditional plea of guilty to the charge of OUIL 3d in Case 5, preserving his right to challenge on appeal the validity of one of the other underlying convictions (Case 3). Before appealing his OUIL 3d conviction in Case 5, the defendant made a separate motion in Case 3 to have his plea-based conviction set aside. After this motion was granted, the defendant moved in the circuit court to withdraw his plea in Case 5, and this motion was denied. [230 Mich App 99-100.]

On those facts, we upheld the defendant's OUIL 3d conviction, in effect treating defendant's earlier challenge to the district court conviction of OUIL 2d as a collateral attack.

The holding in *Ingram* is consistent with the analogous principle that long delayed new trial motions are disfavored. See *People v Johnson*, 386 Mich 305; 192 NW2d 482 (1971) (no error in the denial of a motion for a new trial where the motion was brought fourteen years after the plea); *People v Curry*, 142 Mich App 724, 730; 371 NW2d 854 (1985) (no abuse of discretion in denying a motion for a new trial brought fourteen years after conviction where the defendant never indicated he was innocent of the crime to which he pleaded guilty).

Similarly, where an appeal to the Court of Appeals is delayed by more than twelve months after judgment, appeal is foreclosed and defendant is limited to the post-appeal relief provisions under MCR 6.501 *et seq.* MCR 7.205(F)(3). In essence, a long delayed direct appeal is treated as collateral. No principle countenances giving a defendant in district court greater freedom to attack a plea-based conviction than our rules allow for felony convictions. Accordingly, we hold today that long delayed direct appeals are deemed collateral.

Where a motion to withdraw a guilty plea is made after conviction and sentencing, it must be made based on a showing of miscarriage of justice. *People v Winegar*, 380 Mich 719, 731; 158 NW2d 395 (1968); MCL 769.26; MSA 28.1096. See also *Peguero v United States*, 526 US 23; 119 S Ct 961; 143 L Ed 2d 18 (1999) (the failure of a trial court to inform a defendant of his right to appeal is harmless where he knew of his right to appeal). Requests to withdraw pleas are generally regarded as frivolous where circumstances indicate that the true motivation behind the motion is sentencing concerns. *People v Holmes*, 181 Mich App 488; 449 NW2d 917 (1989). No miscarriage of justice would result here by rejecting defendant's motion to withdraw the guilty plea. Defendant has never claimed actual innocence, and the principal motivation behind the motion is plainly extrication from the sentencing implications of OUIL 3d.

Accordingly, the judgment of the Court of Appeals is reversed and the defendant's conviction of OUIL 2d is reinstated. In view of the ambiguity in the rules regarding delayed appeals, we are today, by separate order, publishing for comment proposed amendments

of MCR 6.610 and 7.103 to clarify the time limits for challenging plea-based convictions in district court.

WEAVER, C.J., and BRICKLEY, TAYLOR, CORRIGAN, and YOUNG, JJ., concurred.

CAVANAGH, J. (*dissenting*). While the facts of this case raise some concerns with the operating mechanics of our court rules, I would address these concerns in their proper forum, rather than resort, as the majority does, to an ill-grounded and conclusory opinion which, I fear, will do little more than blur the lines that this case would seem to indicate need clarification.

I

As the transcript of the February 1, 1995, plea proceeding in this case demonstrates, and as the majority does not dispute, the plea in this matter was hopelessly defective. The district judge gave no advice whatsoever and asked nothing of the defendant;[1] there was no recitation of a factual basis, nor any elicitation of a waiver of rights. In essence, defense counsel merely stated that the defendant was going to plead guilty, and the trial judge accepted the plea. It is these strange, and, one would hope, not often repeated, facts that underlie the current controversy.[2]

---

[1] The defendant spoke only once, when asked if he had any comments before sentencing.

[2] The majority suggests that it is unaware of any court rule that requires "the prosecutor's presence at misdemeanor arraignments where [the] defendant pleads guilty as charged." *Ante* at 606, n 7. I would agree, of course, that we have, thus far, enacted no such rule. Nonetheless, it would seem painfully obvious that the adversarial system of justice we utilize works best when there are, in fact, adversaries present. It is indisputable that, were the prosecutor present, and, presumably, sufficiently

In reviewing the merits of the successor district judge's ruling on the motion to withdraw the plea, I find it difficult indeed to even argue that there was an abuse of discretion in granting the motion. The court rule allowing the motion of withdrawal of district court guilty pleas is MCR 6.610(E)(7), which provides in part:

> The following provisions apply where a defendant seeks to challenge the plea.
>
> (a) A defendant may not challenge a plea on appeal unless the defendant moved in the trial court to withdraw the plea for noncompliance with these rules. Such a motion may be made either before or after sentence has been imposed.
>
> (b) *If the trial court determines that a deviation affecting substantial rights occurred, it shall correct the deviation and give the defendant the option of permitting the plea to stand or of withdrawing the plea.* If the trial court determines either a deviation did not occur, or that the deviation did not affect substantial rights, it may permit the defendant to withdraw the plea only if it does not cause substantial prejudice to the people because of reliance on the plea. [Emphasis supplied.]

The rule, of course, permits denial of a motion to withdraw a plea if the prosecution would be prejudiced by such a withdrawal. It would be difficult to state that that would be the case here, given the availability of the testimony of the arresting police

---

aware to be able to point out the deficiencies in the plea, countless time, effort, and judicial resources would have been spared, with the matter being corrected in the trial court, rather than on application for leave to this Court. Likewise, the failings of the district judge's plea procedure in this case are so substantial as to require notice that, had the district court made any effort to comply with the court rules, this decision might not be necessary.

officers and the blood alcohol test.[3] Indeed, the prosecutor makes no such argument before this Court, arguing only that the defendant's efforts are collateral attacks on the conviction, to which the usual rules regarding requests for withdrawal of pleas would not apply.

II

The majority addresses two questions, the first being whether this attack is direct or collateral, and the second being, implicitly, whether that would even matter to this Court. With respect to the first question, the majority agrees that this motion for withdrawal of plea, coming within the case in which the conviction was entered, is "technically correct." *Ante* at 610. I would agree with both the successor district judge and the circuit judge, as well as the Court of Appeals majority, and find that this challenge was indeed a direct attack on the conviction, with no need to offer the majority's modifiers. As the Court of Appeals majority effectively noted:

> The procedures for taking a plea in the district court, and for challenging such a plea, are addressed in MCR 6.610(E). Pursuant to subsection (7)(a) of that rule,

> "[a] defendant may not challenge a plea on appeal unless the defendant moved in the trial court to withdraw the plea for noncompliance with these rules. Such a motion may be made either before or after sentence has been imposed."

> The rules applicable to the district court provide no time limit by which such a motion must be made, and we are not persuaded that we should look to the circuit court rules to

---

[3] The prosecutor's brief to this Court reveals that defendant's blood alcohol test showed a 0.24 percent blood alcohol level.

establish a time limit for moving to withdraw a plea in the district court. Because the language of the court rule is clear, we should apply it as written. There being no time restrictions specified in MCR 6.610(E), we decline to construe this court rule as containing one. See *People v Harris*, 224 Mich App 597, 601; 569 NW2d 525 (1997). Moreover, we cannot assume that the drafters inadvertently omitted from one court rule the language placed in another court rule, and then, on the basis of that assumption, apply what is not there. Cf. *Farrington v Total Petroleum, Inc*, 442 Mich 201, 210; 501 NW2d 76 (1993).

While there is no time limit for filing a postjudgment motion to set aside a plea-based conviction, MCR 7.101(B)(1) provides a twenty-one-day period from the time of the entry of the order or judgment appealed from for (1) taking an appeal by right from the district court to the circuit court or (2) filing a motion for postjudgment relief in order to preserve an appeal by right. In this case, defendant's motion to set aside his plea-based conviction was not filed within that period. However, under MCR 7.103(A)(2), a circuit court may grant leave to appeal from the district court after the time for taking an appeal under MCR 7.101(B)(1) has expired. Accordingly, if defendant had lost his motion in the district court, he may still have been able to take a direct appeal. To hold that a defendant may challenge his plea-based conviction only on direct appeal, and then to prevent him from taking one of the steps necessary to do so, would defy logic. Because we conclude that defendant's challenge to his plea-based conviction was a direct attack, and the prosecution does not otherwise contest the merits of the district court's decision to grant defendant's motion, we hold that the district court did not abuse its discretion in granting defendant's motion to set aside his plea-based conviction. [230 Mich App 95, 101-102; 583 NW2d 495 (1998).]

The majority relies heavily on *People v Ingram*, 439 Mich 288; 484 NW2d 241 (1992), while hypothesizing that the instant case "differ[s] somewhat," in that the appeal in *Ingram* came to this Court as a challenge to

the defendant's circuit court conviction of OUIL 3d. *Ante* at 613. In other words, the *Ingram* defendant challenged his prior conviction by way of an appeal of a subsequent conviction, i.e., a collateral attack. That would seem to be, given the focus of the courts below and the majority on the distinction between direct and collateral attacks, more than a minor difference and, in fact, a substantial distinction.

In any event, given the majority's holding, it would seem that we may short-circuit our discussion of the finer nuances of direct and collateral attacks because the majority simply summarily states that "we hold today that long delayed direct appeals are deemed collateral." *Ante* at 614. I disagree with, and indeed have difficulty even following, the "logic" of the majority's decision, which would cite our decision in *Ingram*, as well as various Court of Appeals decisions, and then render them, in effect, pointless. Under the majority's rule, apparently supported only by analogy to *People v Johnson*, 386 Mich 305; 192 NW2d 482 (1971), and *People v Curry*, 142 Mich App 724; 371 NW2d 854 (1985) (cases that dealt with delays of five and fourteen *years* in bringing a motion for a new trial[4]), the majority seems to suggest that, if not brought within some as yet undefined expedient time frame that is not "long delayed," all postconviction challenges are simply collateral. *Ante* at 614. While I certainly agree with the underlying suggestion of *Johnson* and *Curry* that new trial motions brought many years after conviction are disfavored, I would find nothing in the text or the rationale of those

---

[4] The delay in this case was fourteen *months*.

cases, dealing with delays that were of an entirely different magnitude (years versus months) than the delays herein, that would have any particular applicability to this case.

III

It would seem reasonably clear that the difficulty in this case results from the fact that our district court rules lack a time limit for bringing a motion to withdraw a plea. That would seem to be something of an aberrancy in our rules. This Court, in its administrative role, is well equipped to deal with those difficulties in application of our rules that become apparent in the course of usage. Should a majority of the Court believe that a case such as this is sufficiently likely to reoccur as to require action,[5] this Court would have no difficulty modifying our rules to prevent such a reoccurrence. Instead, the majority simply adopts a rule that would retrospectively make impermissible what was, when it occurred, permissible under the court rules.

The underlying motivation of the Court's decision, as implied by the majority's opinion, is a belief that there was some "sharp practice" below. The majority, in essence, seems to be making a value judgment that defendant should not be allowed to withdraw his plea where the only reason for his doing so was the cunning of his counsel in not pointing out the district judge's shortcomings. I would disagree with both portions of that judgment. As to the first part, as mentioned above, there is little doubt that, were defend-

---

[5] It is worth recalling, as previously detailed, the compilation of errors that was necessary for this case to find its way to this Court.

ant allowed to withdraw his plea, the prosecution
would have no difficulty obtaining a conviction on the
basis of the police officer's testimony and the blood
alcohol evidence. While this might deprive the pros-
ecutor of the ability to enhance defendant's subse-
quent offense, the unfortunateness of that result must
be weighed with the unfortunate results that will
surely be engendered with the Court's opinion today.

This Court has, along with the Court of Appeals,
expended a considerable effort to delineate the lines
between direct and collateral postconviction chal-
lenges. Today the Court endeavors to obscure those
lines, and further suggests that our prior labors were
simply pointless. The question of collateral versus
direct challenges appears in contexts far more com-
plex than the withdrawal of a guilty plea in a district
court drunk driving case.

While no court wishes to see a just conviction
vacated, it must be recalled that two things are true
in this case: first, that the conviction was obtained by
a plea that was woefully deficient and wholly unable
to stand on its own, and, second, that, whatever our
decision today, it is not suggested that there would be
any serious impediments to the prosecutor obtaining
a conviction on this charge were the plea to be with-
drawn. Rather than recognize these facts, and the per-
haps broad-reaching and thus far undetermined scope
of its opinion today, the majority simply selects the
easiest, albeit least supported, path toward a particu-
lar result.

The majority offers that what occurred in this case
was a "transparent manipulation of the system," fixat-
ing on defense counsel as the sole source of the prob-
lem, and stating a steadfast intent to prevent the har-

boring of an appellate "parachute." *Ante* at 604. Addressing these concerns in reverse order, the very idea of harboring an "appellate parachute," which is to say, failing to correct an obvious error where it can be efficiently corrected, can hardly be condoned. That does a disservice to the integrity of our appellate system. In the long run, however, as the effects of today's decision come to pass, and as other appellate courts find themselves tempted to avoid difficult issues in a case simply by ruling that their occurrence should have been, and thus, in Orwellian logic, both is and was, impermissible, I would expect the integrity of our appellate system would suffer more from such reflexive and ill-considered endeavors than it would from being forced to endure a single trial of a single defendant, who, because of some substantial failings below, managed to locate a defect in our court rules.

The majority further attacks defense counsel for doing what is later described by way of quotation in its opinion as "lying in the weeds." I find such criticism to be misplaced in the context of this case. It is without question that the district judge made serious errors. It is further without question that the prosecutor was not present and that the presence of even the most inexperienced prosecutor would likely to have been sufficient to prevent the difficulties that were encountered as a result of the plea-taking proceedings.[6] Indeed, of all the participants in this matter and parties to this case, both present and not present, it appears that defense counsel was alone in adequately

---

[6] Nonetheless, the majority has chosen not only to ignore this failing of the prosecution in favor of an attack on defense counsel, but to, in fact, implicitly condone it. *Ante* at 606, n 7.

performing his role. If the weeds of *Nydam*[7] did indeed exist in this case, they did so only because the trial judge planted them, and the prosecutor was nowhere to be found to trim them. Such failures, and the fear of such weeds, have led this Court to a hasty and ill-considered response, one likely to bring more havoc to the garden than the very weeds they feared. Accordingly, I dissent.

KELLY, J., concurred with CAVANAGH, J.

---

[7] *People v Nydam*, 165 Mich App 476; 419 NW2d 417 (1987).