## PEOPLE v DAVIDOVICH

Docket No. 115871. Decided October 31, 2000. On application by the defendant for leave to appeal, the Supreme Court, in lieu of granting leave, affirmed the judgment of the Court of Appeals.

Tuvia Davidovich, an Israeli citizen, pleaded guilty in the Wayne Circuit Court, Margie R. Braxton, J., of attempted possession of marijuana, with intent to deliver. After sentencing, the defendant persuaded the court to permit him to withdraw his plea on the ground that he had not understood that it would place him in jeopardy of deportation. The Court of Appeals, Hoekstra, P.J., and O'Connell and R. J. Danhof, JJ., reversed on the grounds that immigration consequences are collateral matters, and that failure to appreciate those consequences does not render a plea unknowing or involuntary. 238 Mich App 422 (1999) (Docket No. 211144). The defendant seeks leave to appeal.

In an opinion per curiam, signed by Chief Justice Weaver, and Justices Taylor, Corrigan, Young, and Markman, the Supreme Court *held*:

Immigration consequences of a plea are collateral matters that do not bear on whether the defendant's plea was knowing and voluntary. For the same reason, a failure by counsel to give immigration advice does not render the representation constitutionally ineffective. In this case, the record reflects that the defendant was ably represented, understood his rights, freely chose to plead guilty, and, by his own account, had committed the elements of the offense of which he was pleading guilty.

Affirmed.

Justice Kelly, joined by Justice Cavanagh, dissenting, stated that because the question whether a criminal defendant may withdraw a plea after sentencing on the grounds that the defendant pleaded guilty while unadvised of adverse immigration consequences is one of first impression, instead of issuing a per curiam opinion, the Supreme Court should give itself and the parties the benefit of full briefing and oral argument.

The Court of Appeals reversed the trial court's exercise of its discretion in granting defendant's motion to withdraw his plea, relying on *People v Osaghae (On Reconsideration)*, 460 Mich 529 (1999), and case law from other jurisdictions. However, *Osaghae* did not address the consequences of pleading guilty when unadvised and

ignorant of existing immigration law, and the Court of Appeals appears to have read *Osaghae* too broadly. Thus, the Supreme Court should allow the defendant the opportunity to brief and argue this issue before deciding to extend *Osaghae* to the facts presented. While most jurisdictions considering the question have concluded that a defendant need not be advised of immigration consequences when tendering a guilty plea, it bears noting that this conclusion is not without its critics. Some jurisdictions have enacted statutes requiring courts to inform defendants of possible immigration consequences before they accept their guilty pleas. Whether Michigan should follow this trend deserves more deliberate consideration.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *John D. O'Hair*, Prosecuting Attorney, *Timothy A. Baughman*, Chief, Research, Training and Appeals, and *Joseph A. Puleo*, Assistant Prosecuting Attorney, for the people.

*Mogill, Posner & Cohen* (by *Kenneth M. Mogill*) for the defendant-appellant.

PER CURIAM. The defendant, a foreign citizen, pleaded guilty of a drug offense. After sentencing, he persuaded the circuit court to permit him to withdraw the plea on the ground that he had not understood that his plea would place him in jeopardy of deportation. The Court of Appeals reversed on the grounds that immigration consequences are collateral matters, and that failure to appreciate those consequences does not render a plea unknowing or involuntary. We affirm the judgment of the Court of Appeals.

I

In 1997, the defendant was charged with possession of marijuana with intent to deliver.[1] He pleaded guilty

---

[1] MCL 333.7401(2)(d)(iii); MSA 14.15(7401)(2)(d)(iii).

in circuit court to a reduced charge of attempted possession with intent to deliver.[2]

At sentencing, the court was presented with a presentence report that described the defendant as "an Israeli citizen in the United States on a Non-Immigrant Visa." In light of that status, the court and the assistant prosecutor had this exchange:

> *The Court*: Mr. Prosecutor, do you have anything to say in regard to sentencing?
>
> [*Assistant Prosecutor*]: Your Honor, the Defendant has one prior, I believe, it was in 1991, this case involved the Drug Enforcement Agency in regard to narcotic sales. I don't know exactly what the status of the Defendant is or whether or not he should be in the country. The Court might want to address it.
>
> *The Court*: I don't want to address it.
>
> [*Assistant Prosecutor*]: He is in the country illegally committing crimes.
>
> *The Court*: Mr. Davidovich, do you want to say anything in your behalf? You don't have to.
>
> *The Defendant*: I feel really bad about what I did, but I don't think I'm illegally in this country . . .
>
> *The Court*: I don't want to get into that. It is not within my Jurisdiction. There may be an immigration question, but somebody will address that question at some point, but I won't.

The court then imposed a one-year term of probation, with various conditions.

Two months after sentencing, the defendant filed a "motion for new trial," in which he reported that he had been "placed under arrest immediately after sentencing, by the U.S. of Immigration and Naturalization Service." He alleged that his "absence of knowledge

---

[2] MCL 750.92; MSA 28.287.

as to the immigration consequences of his plea left his plea unknowing and involuntary." Further, he alleged that he had been denied effective assistance of counsel, when his attorney failed to explain "the immigration consequences of a guilty plea."

After hearing argument on the defendant's motion, the circuit court ruled:

> I think that equity will dictate that I allow this gentleman to withdraw his plea.

Asked whether it was finding ineffective assistance of counsel, the court added:

> I won't make a finding that he is ineffective. I won't get into that point.

On those bases, the court granted the defendant's motion, and set aside the plea.

The Court of Appeals granted the prosecuting attorney's application for leave to appeal[3] and reversed the circuit court order. 238 Mich App 422; 606 NW2d 387 (1999).[4]

The defendant has applied to this Court for leave to appeal.

II

In reversing the order of the circuit court, the Court of Appeals distinguished between the "direct" and "collateral" consequences of a plea-based conviction, characterizing immigration consequences as col-

---

[3] Unpublished order, entered June 11, 1998 (Docket No. 211144).

[4] Opinion amended by unpublished order, entered February 3, 2000 (Docket No. 211144). The published opinion reflects the modification ordered by the Court of Appeals.

lateral. 238 Mich App 427-431. It said that "[a] defendant's ignorance of the collateral consequences of a plea does not render the plea involuntary" and that "[c]ounsel's failure to properly advise of collateral consequences of a plea does not bear on whether a defendant properly understood the decision to plead guilty to the charges in question." 238 Mich App 428.

Thus, continued the Court of Appeals, "We have found no authority that holds collateral consequences should be considered in allowing a defendant to withdraw his guilty plea after having been sentenced." 238 Mich App 430. The Court further explained:

> We realize deportation is a much more severe sanction than the defendant anticipated receiving, and defendant's motion to withdraw his plea carries a certain intuitive appeal. One might argue that defendant should only face such a severe sanction after the prosecution has been forced to prove all the elements of the offense. This argument is likely what the trial court had in mind when it claimed that "equity" required that defendant be allowed to withdraw his plea. We disagree. We find it noteworthy that defendant has not asserted his innocence. The immigration consequences of the charged offense are irrelevant to defendant's guilt. Here, defendant simply hopes that by withdrawing his plea he might somehow escape conviction of a crime to which he has already confessed. However, defendant cannot withdraw his plea simply because he would now rather risk the uncertainties of a trial, hopeful that he can stall or eventually avoid deportation.
>
> To the extent that the trial court might be trying to save defendant from deportation, its efforts are misguided. The Congress, through its legislation, decides which crimes merit deportation. As we discussed above, deportation is a collateral consequence of defendant's conviction. It is the fulfillment of a federal immigration policy, and it is unrelated to the trial court's inquiry. The trial court's only concern is whether defendant committed the charged crime

and whether the plea was entered knowingly and voluntarily. Trial courts should not attempt to aid defendants in circumventing the deportation process because they believe deportation is too harsh a consequence for the crime committed. Those sorts of considerations belong to the Immigration and Naturalization Service, its administrative courts, and the federal court system. [238 Mich App 430-431.]

The Court of Appeals also discussed prior appellate decisions, including *People v Kadadu*, 169 Mich App 278; 425 NW2d 784 (1988) and *People v Osaghae (On Reconsideration)*, 460 Mich 529; 596 NW2d 911 (1999). Each involved deportation as a consequence of a guilty plea. In *Kadadu*, the Court of Appeals allowed the circuit court to follow the path that appeared "more equitable" to it:

> As indicated earlier, a motion to withdraw a guilty plea is addressed to the sound discretion of the trial court. Applying this standard, we feel that the trial court did not abuse its discretion in allowing defendant to withdraw his guilty plea. The court listened to both parties' arguments and decided that it would be more equitable to allow defendant to go to trial before suffering the extreme consequences of deportation. Having presided at defendant's guilty plea hearing, the trial judge was in a better position to know the circumstances of the crime to which defendant pled guilty than we are. We are hard pressed to find an abuse of discretion where a trial court has opted to grant to a criminal defendant an opportunity to proceed to trial and there is no showing that the prosecution is prejudiced by defendant's decision to proceed to trial. The court recognized and exercised its discretion in deciding whether defendant should be able to withdraw his guilty plea, and we find no abuse of discretion. [169 Mich App 285.]

In *Osaghae*, the defendant pleaded guilty in 1992, four years before Congress amended the immigration laws to provide that he was subject to deportation.

Distinguishing *Kadadu* on the ground that "the federal law placing Mr. Kadadu at risk of deportation was already on the books at the time of his plea," this Court explained that "defense counsel had no duty in 1992 to predict the future when he rendered legal advice regarding defendant's plea." 460 Mich 533.

In *Osaghae*, this Court also emphasized that "[o]ur system of criminal justice has a substantial interest in finality . . . ." 460 Mich 534. We noted such statements in *People v Ward*, 459 Mich 602, 611-612; 594 NW2d 47 (1999), and *People v Carpentier*, 446 Mich 19, 29, 35-37; 521 NW2d 195 (1994), and we quoted the following passage from *McMann v Richardson*, 397 US 759, 773-774; 90 S Ct 1441; 25 L Ed 2d 763 (1970):

> "What is at stake in this phase of the case is not the integrity of the state convictions obtained on guilty pleas, but whether, years later, defendants must be permitted to withdraw their pleas, which were perfectly valid when made, and be given another choice between admitting their guilt and putting the State to its proof. . . . It is no denigration of the right to trial to hold that when the defendant waives his state court remedies and admits his guilt, he does so under the law then existing . . . . Although he might have pleaded differently had later decided cases then been the law, he is bound by his plea and his conviction unless he can allege and prove serious derelictions on the part of counsel sufficient to show that his plea was not, after all, a knowing and intelligent act." [460 Mich 534.]

In the present case, the Court of Appeals noted that *Osaghae* is distinguishable from both *Kadadu* and this case. Nevertheless, the Court properly "conclude[d] that *Osaghae* informs our decision here, insofar as it holds that the trial court's discretion must be tempered by a proper respect for the finality

of the plea process." 238 Mich App 427. Accordingly, the Court of Appeals reached this conclusion:

> Therefore, we reverse the trial court's order granting defendant's motion to withdraw his guilty plea. In doing so, we hold that *People v Kadadu, supra,* was wrongly decided and therefore should not be followed[5] and that a defendant cannot withdraw his guilty plea after sentencing merely because his trial counsel failed to properly inform him of the immigration consequences of his plea. [238 Mich App 431-432.]

The Court of Appeals correctly decided this case. As it well explained, immigration consequences of a plea are collateral matters that do not bear on whether the defendant's plea was knowing and voluntary.[6] For the same reason, a failure by counsel to give immigration advice does not render the lawyer's representation constitutionally ineffective.[7]

Other jurisdictions have repeatedly come to that conclusion,[8] as evidenced by the recent decision in

---

[5] In *Osaghae,* this Court said, "To the extent that it conflicts with today's decision, *Kadadu* is overruled." 460 Mich 533.

[6] *Osaghae* arguably left open the possibility that defense counsel may have a duty to advise his client of immigration laws in effect *at the time of the plea.* We hold today that defense counsel's failure to advise his client of even *existing* deportation laws does not render a plea unknowing or involuntary.

[7] The phrase "ineffective assistance of counsel" does not refer merely to lawyering that is not optimal. Rather it refers to representation that has sunk to a level at which it is a problem of constitutional dimension. *Strickland v Washington,* 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984), *People v Pickens,* 446 Mich 298; 521 NW2d 797 (1994). Thus, the Court of Appeals correctly found no ineffective assistance of counsel. 238 Mich App 428.

[8] In the present case, the Court of Appeals noted:

> Other courts declining to find ineffective assistance of counsel where a defendant was not informed of the immigration consequences of a guilty plea include *Cordero v United States,* 533 F2d 723 (CA 1, 1976), *United States v Santelises,* 509 F2d 703 (CA 2,

*United States v Gonzalez*, 202 F3d 20 (CA 1, 2000).
In *Gonzalez*, the First Circuit rejected a claim of ineffective assistance, emphasizing the collateral nature of immigration proceedings. Quoting *George*,[9] the court offered a reminder that " '[a] deportation proceeding is a civil proceeding which may result from a criminal prosecution, but is not a part of or enmeshed in the criminal proceeding.' " 202 F3d 25.

Here, the record reflects that the defendant was ably represented, understood his rights, freely chose to plead guilty, and, by his own account, had committed the elements of the offense of which he was pleading guilty.

For these reasons, we affirm the judgment of the Court of Appeals. MCR 7.302(F)(1).

WEAVER, C.J., and TAYLOR, CORRIGAN, YOUNG, and MARKMAN, JJ., concurred.

KELLY, J. (*dissenting*). I would grant leave to appeal. The question whether a criminal defendant may withdraw his plea after sentencing on the grounds that he pleaded guilty while unadvised of adverse immigration consequences is one of first

---

1975), *United States v Yearwood*, 863 F2d 6 (CA 4, 1988), *United States v Gavilan*, 761 F2d 226 (CA 5, 1985), *United States v Nagaro-Garbin*, 653 F Supp 586 (ED Mich, 1987), aff'd 831 F2d 296 (CA 6, 1987), *United States v George*, 869 F2d 333 (CA 7, 1989), *Torrey v Estelle*, 842 F2d 234 (CA 9, 1988), *Varela v Kaiser*, 976 F2d 1357 (CA 10, 1992), *United States v Campbell*, 778 F2d 764 (CA 11, 1985), *Government of the Virgin Islands v Pamphile*, 604 F Supp 753 (DC VI, 1985), *Tafoya v State*, 500 P2d 247 (Alas, 1972), *State v Chung*, 210 NJ Super 427; 510 A2d 72 (1986), and *State v Malik*, 37 Wash App 414; 680 P2d 770 (1984). But see *Williams v State*, 641 NE2d 44 (Ind App, 1995), and *People v Pozo*, 746 P2d 523 (Colo, 1987). [238 Mich 428, n 5.]

[9] See footnote 8.

impression. Instead of issuing a per curiam opinion, this Court should give itself and the parties the benefit of full briefing and oral argument.

I

In 1988, a panel of the Court of Appeals decided the issue presented in this case in the matter of *People v Kadadu*, 169 Mich App 278; 425 NW2d 784 (1988). Like defendant Davidovich, defendant Kadadu had been allowed to withdraw his guilty plea because the trial court "decided that it would be more equitable to allow defendant to go to trial before suffering the extreme consequences of deportation." *Kadadu, supra* at 285. The Court of Appeals affirmed the trial court's exercise of discretion, declaring itself

> hard pressed to find an abuse of discretion where a trial court has opted to grant a criminal defendant an opportunity to proceed to trial and there is no showing that the prosecution is prejudiced by defendant's decision to proceed to trial. [*Id.*]

In this case, the Court of Appeals reversed the trial court's exercise of its discretion in granting defendant's motion to withdraw his plea. *People v Davidovich.*[1] The panel relied on this Court's recent opinion in *People v Osaghae*[2] and case law from other jurisdictions. *Davidovich, supra* at 427.

As both the Court of Appeals and the majority acknowledge, *Osaghae* can be distinguished from this case and from *Kadadu. Ante,* pp 452-453; *Davidovich,*

---

[1] 238 Mich App 422, 423, 431; 606 NW2d 387 (1999). Because *Kadadu* was decided before 1990, the Court of Appeals panel was not bound by it. MCR 7.215(H)(1).

[2] *(On Reconsideration),* 460 Mich 529; 596 NW2d 911 (1999).

*supra* at 427. In *Osaghae*, this Court held that there was no sound basis for challenging a guilty plea when the "federal consequences under federal immigration law did not exist on the day the plea was taken." *Osaghae, supra* at 534. This Court differentiated *Osaghae* from *Kadadu*: "[T]he federal law placing Mr. Kadadu at risk of deportation was already on the books at the time of his plea." *Osaghae, supra* at 533. This Court then overruled *Kadadu*, but only to the extent it conflicted with *Osaghae*.

*Osaghae* did not address the consequences of pleading guilty when unadvised and ignorant of *existing* immigration law. Hence, it did not find that a sound basis for challenging the plea involved in this case was lacking. It acknowledged as much.

The Court of Appeals appears to have read *Osaghae* too broadly. This Court should allow defendant the opportunity to brief and argue this issue before deciding to extend *Osaghae* to the facts presented here.

II

"When first made after sentencing, a motion to withdraw a guilty plea is addressed to the sound discretion of the trial court, and the trial court's decision will not be disturbed unless there is a clear abuse of discretion resulting in a miscarriage of justice." *People v Ovalle*, 222 Mich App 463, 465; 564 NW2d 147 (1997); *People v Winegar*, 380 Mich 719, 730-731; 158 NW2d 395 (1968). See also MCR 6.311(A).

An interesting question is raised here, as in *Kadadu*, whether the trial court's decision to allow defendant to withdraw his plea was incorrect and

rose to an abuse of discretion. Defendant pleaded
guilty on November 17, 1997, and was sentenced on
January 6, 1998. He moved to withdraw his plea only
two months later. At the hearing on the motion, the
prosecutor stated that the people's case would not be
prejudiced should the matter go to trial.

In *Osaghae*, this Court emphasized that "[o]ur sys-
tem of criminal justice has a substantial interest in
finality . . . ." *Id.* at 534. There, the defendant sought
to withdraw his guilty plea nearly five years after it
had been accepted. *Osaghae, supra* at 530. The refer-
ence to finality, quoted both in *Osaghae* and in the
majority opinion here, is drawn from *McMann v Rich-
ardson*,[3] which refers to motions to withdraw pleas
brought years after the plea. Because defendant
Davidovich moved to withdraw his plea only two
months after sentencing, arguments concerning the
interest of finality are unpersuasive.

III

Deportation is a serious measure. It may result "in
loss of both property and life, or of all that makes life
worth living." *Ng Fung Ho v White*.[4] It may be a more
severe penalty than the sentence meted out for the
underlying crime.

In this case, for instance, defendant's sentence was
one year of probation. Defendant owns a business
and is married.[5] As a result of this conviction, he will

---

[3] 397 US 759, 773-774; 90 S Ct 1441; 25 L Ed 2d 763 (1970).

[4] 259 US 276, 284; 42 S Ct 492; 66 L Ed 938 (1922).

[5] It is not clear from the record whether defendant's wife, Elizabeth
Ann Davidovich, née Lukomski, is an American citizen. According to the
defendant's presentence report, defendant did meet and marry her after
he arrived in this country in 1991.

conceivably his family. The trial court determined
that one year's probation served the interests of jus-
tice for defendant's crime. Given that his deportation
will exact a far greater penalty than that on him, it is
questionable whether he pleaded guilty knowingly
and intelligently.

As the majority points out, most jurisdictions con-
sidering the question have concluded that one need
not be advised of immigration consequences when
tendering a guilty plea. *Ante*, p 453, n 8. It bears not-
ing, however, that this conclusion is not without its
critics.[6] Some jurisdictions have enacted statutes
requiring courts to inform defendants of possible
immigration consequences before they accept their
guilty pleas.[7] Whether Michigan should follow this
trend deserves more deliberate consideration than we
give it today. I would grant leave.

CAVANAGH, J., concurred with KELLY, J.

---

[6] See *People v Pozo*, 746 P2d 523 (Colo, 1987); *Williams v State*, 641
NE2d 44 (Ind App, 1995). See also note, *Deportation as a collateral con-
sequence of a guilty plea: Why the federal precedent should be reevalu-
ated*, 26 Val U L R 895 (1992); note, *Weakness of the collateral conse-
quences doctrine: Counsel's duty to inform aliens of the deportation con-
sequences of guilty pleas*, 16 Fordham Int'l L J 1094 (1993); note, *Alien
defendants in criminal proceedings: Justice shrugs*, 36 Am Crim L R
1395 (1999).

[7] Cal Penal Code § 1016.5; Conn Gen Stat § 54-1j; Mass Gen Laws ch
278, § 29D; Or Rev Stat § 135.385; Rev Code Wash § 10.40.200.

These statutes require the trial court to inform a defendant who is not a
citizen of the United States that conviction of the offense charged may
result in (1) deportation, (2) exclusion from admission to the United
States, or (3) denial of naturalization pursuant to the law of the United
States. See, e.g., Cal Penal Code § 1016.5(a).