Hoekstra, P.J.
 

 The prosecution appeals the trial court’s order allowing defendant, a resident alien, to withdraw his guilty plea after he learned that his conviction made him subject to deportation under federal immigration laws.
 
 [1]
 
 Because the immigration consequences of a guilty plea are collateral, we find that the trial court abused its discretion in allowing defendant to withdraw his plea.
 

 I
 

 After being charged with possession with intent to deliver marijuana, MCL 333.7401(2)(d)(iii); MSA 14.15(7401)(2)(d)(iii), defendant pleaded guilty, and the trial court sentenced him to probation for one year. A few months later, defendant filed a “delayed motion for a new trial,” claiming that his defense counsel never advised him that his plea could affect his immigration status. Although not labeled as such,
 
 *424
 
 the parties treat defendant’s motion as a motion to withdraw a plea after sentencing under MCR 6.311(A).
 
 [2]
 
 Defendant argued that his counsel was ineffective and, consequently, that the guilty plea was unimowing and involuntary. The prosecution objected to defendant’s motion, arguing that defense counsel’s failure to warn defendant about the immigration consequences of his plea did not render the plea unknowing and involuntary. The trial court eventually granted defendant’s motion, stating only that “equity will dictate that. . . this gentleman [be allowed] to withdraw his plea.”
 

 n
 

 We granted the prosecution’s application for leave to appeal to consider whether defense counsel’s failure to properly advise defendant of the potential
 
 *425
 
 immigration consequences of the plea denied him effective assistance of counsel.
 

 Generally, it is well established that there is no absolute right to withdraw a plea once the trial court has accepted it.
 
 People v Haynes,
 
 221 Mich App 551, 558; 562 NW2d 241 (1997);
 
 People v Eloby (After Remand),
 
 215 Mich App 472, 474-475; 547 NW2d 48 (1996). If a defendant moves to withdraw a plea after sentencing, the decision whether to grant the motion falls within the trial court’s discretion.
 
 Haynes, supra-, Eloby, supra.
 
 We will not disturb the trial court’s decision unless the court clearly abused its discretion, resulting in a miscarriage of justice.
 
 Eloby, supra.
 
 Further, “[t]o establish ineffective assistance of counsel in the context of a guilty plea, courts must determine whether the defendant tendered a plea voluntarily and understandingly.”
 
 People v Corteway,
 
 212 Mich App 442, 445; 538 NW2d 60 (1995). Defense counsel’s advice does not need to be correct, but it must fall within the range of competence demanded of attorneys in criminal cases.
 
 Haynes, supra.
 

 Michigan has little case law addressing the more specific question whether a defendant can withdraw his plea because his counsel failed to warn him of the potential immigration consequences of the plea. An earlier opinion from this Court,
 
 People v Kadadu,
 
 169 Mich App 278, 281; 425 NW2d 784 (1988), places this determination within the trial court’s discretion. In
 
 Kadadu,
 
 the defendant alleged that his counsel failed to advise him he could be deported because of his plea-based conviction. Mindful of severe hardship that can often attend deportation, the
 
 Kadadu
 
 panel found that the trial court had not abused its discretion in allowing the defendant to withdraw his guilty plea. As
 
 *426
 
 we will yet discuss, we believe this reasoning is flawed, because the proper inquiry should keep in mind the virtue of finality and focus on the collateral nature of deportation.
 

 Indeed, our Supreme Court’s recent decision in
 
 People v Osaghae,
 
 460 Mich 529; 596 NW2d 911 (1999), although not squarely on point, suggests that the trial court’s discretion on this particular question is not quite as unfettered as described in
 
 Kadadu.
 
 In
 
 Osaghae, id.
 
 at 533, the Court affirmed the virtue of finality in plea-based convictions, especially where subsequent attacks on the integrity of the plea allege that the defendant was misinformed about the consequences of the plea:
 

 Absent a substantial change in law that is to be applied retroactively, the validity of a guilty plea is to be determined under the law on the day the plea is taken. And even in such an instance, high thresholds must be cleared if a defendant seeks to withdraw a plea after a lengthy delay,
 
 or for reasons relating to the consequences of the plea.
 
 [Emphasis supplied.]
 

 The Court also noted that, “[w]ith regard to the consequences of a plea under federal immigration law, there is no state-law requirement that a defendant be given such advice.”
 
 [3]
 

 Id.
 
 We are mindful that
 
 Osaghae
 
 is distinguishable from the instant case and
 
 Kadadu.
 
 In
 
 Osaghae,
 
 federal immigration law changed after the defendant entered his plea and received his sentence, making him subject to deportation. The Court
 
 *427
 
 held that a defense counsel could not be expected to predict changes in the immigration code. Here, unlike in
 
 Osaghae,
 
 we must determine whether defense counsel’s failure to advise a client of potential consequences under
 
 current
 
 immigration law should be considered ineffective assistance. This important distinction between
 
 Osaghae
 
 and
 
 Kadadu
 
 notwithstanding, we conclude that
 
 Osaghae
 
 informs our decision here, insofar as it holds that the trial court’s discretion must be tempered by a proper respect for the finality of the plea process.
 

 in
 

 Our review of state and federal cases that have addressed the issues convinces us that it is properly resolved in terms of the direct and collateral consequences of a plea-based conviction.
 
 [4]
 
 As we noted above, when a defendant argues ineffective assistance of counsel in the context of a guilty plea, the defendant is essentially arguing that counsel failed to provide sufficient information regarding the consequences, elements, or possible defenses of the plea. Absent sufficient information, the plea would be unknowing and, consequently, involuntary. For example, in
 
 United States v Del Rosario,
 
 284 US App DC 90, 94; 902 F2d 55 (1990), the circuit court wrote:
 

 As we noted in
 
 United States v Sambro
 
 [147 US App DC 75, 79; 454 F2d 918 (1971)], the Supreme Court’s observation in
 
 Brady v United States,
 
 397 US 742, 755; 90 S Ct
 
 *428
 
 1463, 1472; 25 L Ed 2d 747 (1970), “that the accused must be ‘fully aware of the direct consequences,’ ” of a guilty plea supports an assumption that the Court, by using the word “ ‘direct’ excluded collateral consequences.”
 

 We agree that for purposes of determining whether defense counsel was effective a defendant need only be made aware of the direct consequences of a guilty plea. A defendant’s ignorance of the collateral consequences of a plea does not render the plea involuntary. Counsel's failure to properly advise of collateral consequences of a plea does not bear on whether a defendant properly understood the decision to plead guilty to the charges in question.
 
 [5]
 

 Although we acknowledge that deportation is a severe collateral consequence, we cannot conclude that it warrants treatment as a direct consequence of a plea. Deportation is only one possible collateral consequence of a guilty plea. Allowing defendants to withdraw their pleas once they discover that their conviction subjects them to deportation would open the door for defendants to withdraw their pleas for other collateral reasons. As the
 
 Del Rosario
 
 court
 
 *429
 
 noted,
 
 supra
 
 at 94, there are several types of collateral consequences:
 

 Collateral consequences of a guilty plea are many. They may include the loss of civil service employment,
 
 United States v Crowley,
 
 529 F2d 1066 (CA 3, 1975), cert den, 425 US 995; 96 S Ct 2209; 48 L Ed 2d 420 (1976), of the right to vote and to travel freely abroad,
 
 Meaton v United States,
 
 328 F2d 379 (CA 5, 1964), cert den, 380 US 916; 85 S Ct 902; 13 L Ed 2d 801 (1965), of the right to a driver’s license,
 
 Moore v Hinton,
 
 513 F2d 781, 782-783 (CA 5, 1975), and of the right to possess firearms, 18 USC § 921.
 

 The dissent in
 
 People v Pozo,
 
 746 P2d 523, 532, n 1 (Colo, 1987), also noted the various collateral consequences that can attend plea-based convictions:
 

 Although deportation has an undeniable impact on a defendant’s life, so do other collateral consequences which often flow from a guilty plea. Failure to inform the defendant of the following consequences of his guilty plea has been held not to render the plea invalid.
 
 Wright v United States,
 
 624 F2d 557, 561 (CA 5 1980) (a plea’s possible enhancing effects on a subsequent sentence); . . .
 
 Cuthrell v Director,
 
 475 F2d 1364, 1366 (CA 4, 1973), cert den 414 US 1005; 94 S Ct 362; 38 L Ed 2d 241 (1973) (institution of separate civil proceedings against defendant for commitment to a mental health facility);
 
 Hutchinson v United States,
 
 450 F2d 930, 931 (CA 10, 1971) (loss of good time credit);
 
 Waddy v Davis,
 
 445 F2d 1 (CA 5, 1971) (disenfranchisement);
 
 United States v Vermeulen,
 
 436 F2d 72, 75 (CA 2, 1970), cert den 402 US 911; 91 S Ct 1390; 28 L Ed 2d 653 (1971) (possibility of imposition of consecutive sentences); . . .
 
 Redwine v Zuckert,
 
 317 F2d 336 (DC Cir, 1963) (possibility of undesirable discharge from the armed forces);
 
 State v Riggins,
 
 466 A2d 981 (NJ Super Ct App Div 1983) (loss of employment).
 

 We discern no principled distinction between the immigration consequences of a plea and these other
 
 *430
 
 collateral consequences. We have found no authority that holds collateral consequences should be considered in allowing a defendant to withdraw his guilty plea after having been sentenced. Such a holding would seriously jeopardize the finality of plea-based convictions. As the United States Supreme Court noted in
 
 United States v Timmreck,
 
 441 US 780, 784; 99 S Ct 2085; 60 L Ed 2d 634 (1979):
 

 “Every inroad on the concept of finality undermines confidence in the integrity of our procedures; and, by increasing the volume of judicial work, inevitably delays and impairs the orderly administration of justice. The impact is greatest when new grounds for setting aside guilty pleas are approved because the vast majority of criminal convictions result from such pleas. Moreover, the concern that unfair procedures may have resulted in the conviction of an innocent defendant is only rarely raised by a petition to set aside a guilty plea.” [Quoting
 
 United States v Smith,
 
 440 F2d 521, 528-529 (CA 7, 1971) (Stevens, J., dissenting).]
 

 We realize deportation is a much more severe sanction than the defendant anticipated receiving, and defendant’s motion to withdraw his plea carries a certain intuitive appeal. One might argue that defendant should only face such a severe sanction after the prosecution has been forced to prove all the elements of the offense. This argument is likely what the trial court had in mind when it claimed that “equity” required that defendant be allowed to withdraw his plea. We disagree. We find it noteworthy that defendant has not asserted his innocence. The immigration consequences of the charged offense are irrelevant to defendant’s guilt. Here, defendant simply hopes that by withdrawing his plea he might somehow escape conviction of a crime to which he has already con
 
 *431
 
 fessed. However, defendant cannot withdraw his plea simply because he would now rather risk the uncertainties of a trial, hopeful that he can stall or eventually avoid deportation.
 
 [6]
 

 To the extent that the trial court might be trying to save defendant from deportation, its efforts are misguided. The Congress, through its legislation, decides which crimes merit deportation. As we discussed above, deportation is a collateral consequence of defendant’s conviction. It is the fulfillment of a federal immigration policy, and it is unrelated to the trial court’s inquiry. The trial court’s only concern is whether defendant committed the charged crime and whether the plea was entered knowingly and voluntarily. Trial courts should not attempt to aid defendants in circumventing the deportation process because they believe deportation is too harsh a consequence for the crime committed. Those sorts of considerations belong to the Immigration and Naturalization Service, its administrative courts, and the federal court system.
 

 Therefore, we reverse the trial court’s order granting defendant’s motion to withdraw his guilty plea. In doing so, we hold that
 
 People v Kadadu, supra,
 
 was wrongly decided and therefore should not be followed and that a defendant cannot withdraw his guilty plea after sentencing merely because his trial
 
 *432
 
 counsel failed to properly inform him of the immigration consequences of his plea.
 
 [7]
 

 Reversed.
 

 [1]
 

 Defendant is a citizen of Israel.
 

 [2]
 

 We note that MCR 6.311(A) creates some confusion concerning the time for filing a motion to withdraw a guilty plea According to the rule, defendant must file a motion to withdraw the plea within the period prescribed for filing an application for leave to appeal. MCR 7.205(A) sets the time for filing an application for leave to appeal at twenty one days, while MCR 7.205(F) allows one to file a late application up to twelve months after the entry of judgment. Whether MCR 6.311(A) refers to the twenty one days or twelve months when it states “the time for filing an application for leave” is an ambiguity of some concern, but we need not address it here. The question is important, because motions to withdraw guilty pleas filed after “the time for filing an application for leave” must be brought under subchapter 6.500 of the Michigan Court Rules, which, in certain cases, prohibits the trial court from granting the motion. See MCR 6.508(D)(3). The principles we announce today, however, would prevent defendant from prevailing under either MCR 6.311 or subchapter 6.500. Because the parties’ briefs appear to assume that defendant’s motion was filed under MCR 6.311, and not under subchapter 6.500, we will assume that defendant properly moved to withdraw his guilty plea under MCR 6.311. Should a future decision address this issue and decide that defendants must bring their motions within twenty one days or file under sub-chapter 6.500, it will not affect our decision here today.
 

 [3]
 

 Regarding the virtue of finality, see also
 
 People v Ingram,
 
 439 Mich 288, 293-294; 484 NW2d 241 (1992) (“[C]onsiderations of finality and administrative consequences must become part of the process with which we assure the achievement of proceedings that are consistent with the rudimentary demands of fair procedure”.)
 

 [4]
 

 We note that the use of the terms “collateral” and “direct” could invite some confusion, because these terms are also used to describe the type of attack one makes on a guilty plea. Here, however, we are using the terms to describe the nature of the consequences, not the nature of the attack. That defendant will be deported is a collateral consequence of his sentence.
 

 [5]
 

 Other courts declining to find ineffective assistance of counsel where a defendant was not informed of the immigration consequences of a guilty plea include
 
 Cordero v United States,
 
 533 F2d 723 (CA 1, 1976),
 
 United States v Santelises,
 
 509 F2d 703 (CA 2, 1975),
 
 United States v Yearwood,
 
 863 F2d 6 (CA 4, 1988),
 
 United States v Gavilan,
 
 761 F2d 226 (CA 5, 1985),
 
 United States v Nagaro-Garbin,
 
 653 F Supp 586 (ED Mich, 1987), aff’d 831 F2d 296 (CA 6, 1987),
 
 United States v George,
 
 869 F2d 333 (CA 7, 1989),
 
 Torrey v Estelle,
 
 842 F2d 234 (CA 9, 1988),
 
 Varela v Kaiser,
 
 976 F2d 1357 (CA 10, 1992),
 
 United States v Campbell,
 
 778 F2d 764 (CA 11, 1985),
 
 Government of the Virgin Islands v Pamphile,
 
 604 F Supp 753 (DC VI, 1985),
 
 Tafoya v State,
 
 500 P2d 247 (Alas, 1972),
 
 State v Chung,
 
 210 NJ Super 427; 510 A2d 72 (1986), and
 
 State v Malik,
 
 37 Wash App 414; 680 P2d 770 (1984). But see
 
 Williams v Indiana,
 
 641 NE2d 44 (Ind App, 1995), and
 
 People v Pozo,
 
 746 P2d 523 (Colo, 1987).
 

 [6]
 

 We note that nothing prevents defendant from arguing that his innocence, rather than the collateral consequences of the conviction, provides a basis for withdrawing the plea. Here, defendant stated on the record that he possessed marijuana with the intent of passing it on to someone else. Defendant’s assertion of innocence, coupled with his reasons for pleading guilty, could provide an adequate basis for allowing him to withdraw his plea.
 

 [7]
 

 MCR 7.215(H)(1) provides that we are only bound by decisions from this Court published after 1990. Because
 
 Kadadu
 
 was published in 1988, we are not bound by it, and we do not have to request a conflict panel to overturn it.