STATE of Iowa, Appellee,

v.

Ismael M. RAMIREZ, Appellant.

No. 00–0393.

Supreme Court of Iowa.

Sept. 6, 2001.

James A. Benzoni of Benzoni & Mains, P.L.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, Cristen C. Odell, Assistant Attorney General, John P. Sarcone, County Attorney, and Daniel C. Voogt, Assistant County Attorney, for appellee.

LARSON, Justice.

Pursuant to a plea agreement, Ismael Ramirez, a permanent legal resident from Mexico, pled guilty to a charge of possession of a controlled substance with intent to deliver, a class "C" felony. He was sentenced to a term not to exceed ten years, but the sentence was suspended and he was placed on probation.

Neither at the plea nor the sentencing proceedings did the district judge mention the possible effects of the guilty plea and sentence on Ramirez's immigration status. Specifically, the judge did not determine whether Ramirez was aware that his guilty plea would subject him to mandatory deportation without any possibility of relief.[1]

The defendant contends the district court erred in accepting his guilty plea without advising him of the deportation consequences. Ramirez also claims his trial counsel was ineffective for failing to inform him of those consequences.

## I. *The Duty of the Court.*

■ Ramirez contends the court committed constitutional error when it accepted his guilty plea without satisfying itself he understood the deportation consequences. The State responds that Ramirez failed to object at the plea proceeding, and in any event, the court was not required to make such an inquiry. Ramirez rejoins, on the preservation issue, that he is excused from objecting at the plea hearing because his trial counsel was ineffective. We consider this issue on its merits, despite Ramirez's failure to object before the district court and conclude the

court was not required to make this inquiry.

> "It is well-settled that a trial court is not required to advise a defendant *sua sponte* of potential federal deportation consequences of a plea of guilty to a felony charge when accepting such plea."

*People v. Pozo,* 746 P.2d 523, 526 (Colo. 1987) (holding counsel must investigate relevant immigration law when counsel is aware defendant is an alien). Indeed, this rule has been characterized as "unanimous." *Id.* at 533 (Rovira, J., dissenting on other grounds). As one court has said, however,

> we recognize that some states have imposed the duty to inform non-citizen defendants about the deportation consequences that result from entering a guilty plea. Nevertheless, *such provisions have been enacted by statute or rule ....*

*State v. Rosas,* 183 Ariz. 421, 904 P.2d 1245, 1247 (Ct.App.1995) (emphasis added).

Under our rules of criminal procedure, the court

> shall not accept a plea of guilty without first determining that the plea is made voluntarily and intelligently and has a factual basis. Before accepting a plea of guilty, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, the following:
>
> (1) The nature of the charges to which the plea is offered.
>
> (2) The mandatory minimum punishment, if any, and the maximum possible punishment provided by the statute defining the offense to which the plea is offered.

---

1. No deportation proceedings following the plea and sentencing are shown in this record, and for that reason, the State argues we should not decide this case on the basis that those proceedings were instituted or threatened. For purposes of this appeal, however, we assume Ramirez is subject to mandatory deportation based on his conviction.

(3) That the defendant has the right to be tried by a jury, and at trial has the right to assistance of counsel, the right to confront and cross-examine witnesses against the defendant, the right not to be compelled to incriminate oneself, and the right to present witnesses in the defendant's own behalf and to have compulsory process in securing their attendance.

(4) That if the defendant pleads guilty there will not be a further trial of any kind, so that by pleading guilty the defendant waives the right to a trial.

Iowa R.Crim. P. 8(2)(b). Our rule does not require the court to inform the defendant regarding consequences such as deportation.

Ramirez contends his constitutional rights transcend rule 8, and the court's failure to advise him of the impact of the guilty plea violates his due process rights under the federal and state constitutions. He claims the court failed to satisfy itself that the plea was knowing, intelligent, and voluntary because it did not raise a possible deportation issue. He cites *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S.Ct. 366, 369, 88 L.Ed.2d 203, 208 (1985) ("The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" (quoting *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162, 168 (1970))).

Our court has not discussed the failure of the court to advise a defendant of deportation consequences.[2] We rely to some extent on federal authorities applying similar guilty-plea rules.

Federal Rule of Criminal Procedure 11(c) requires certain inquiries by the court:

**Advice to Defendant.** Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, the following:

(1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law, including the effect of any special parole or supervised release term and, when applicable, that the court may also order the defendant to make restitution to any victim of the offense. . . .

One authority has noted that, while some direct consequences of a guilty plea must be understood by the defendant,

[o]ther consequences are more clearly collateral, and it is not required that defendant be informed of them. These have been held to include: loss of civil rights; increased punishment if the defendant should repeat the offense; undesirable discharge from the armed forces; *deportation;* ineligibility for federal benefits; later parole date; revocation of an existing parole; an adverse recommendation from the court to the parole authorities; denial of "good time" as a multiple offender; revocation of a driver's license; and an adverse effect on civil litigation. . . . A defendant need not be told that the court lacks power to order that the federal sentence run concurrently with a state sentence. Defendants need not be told when pleading guilty that the conduct to which they entered the plea might be used as a

**2.** Our prior case of *Mott v. State,* 407 N.W.2d 581 (Iowa 1987), only addressed the duty of defense counsel.

predicate offense for a RICO prosecution.

Charles Alan Wright, *Federal Practice and Procedure* § 173, at 191–94 (1999) [hereinafter Wright] (emphasis added) (footnotes omitted).

■ We agree with these authorities and the majority rule among states that the court is not required by due process to ascertain the defendant's understanding of possible deportation consequences, despite Ramirez's argument that deportation is different in kind from other consequences because of its severity. It would, however, be proper, and probably desirable, for the court to advise a defendant of such matters. *See* Wright § 173, at 195; *see also United States v. Russell,* 686 F.2d 35, 41–42 (D.C.Cir.1982) ("District courts need to remember that although they are not required to explain the possibility of deportation to alien defendants before accepting a plea ... nothing prohibits them from doing so. The distribution of justice to alien defendants can only be enhanced if the trial courts make sure defendants know the pandects under which they plead.").

## II.  *The Ineffective-Assistance Claim.*

■ Ramirez claims ineffective assistance of counsel in his decision to plead guilty, based on his lawyer's failure to advise him of the likelihood of deportation.[3] The State relies on our case of *Mott v. State,* 407 N.W.2d 581 (Iowa 1987), which held a lawyer has no duty to inform a defendant of deportation consequences. *Id.* at 584. Ramirez argues that *Mott* should be overruled.

In *Mott* the defendant was a native of Thailand who had been given permanent residency in the United States. He pled guilty to burglary and served a prison term. The United States Immigration and Naturalization Service began deportation proceedings. Mott then began postconviction proceedings to challenge his plea based on ineffective assistance of counsel. In his case, we discussed the significance of direct consequences of a lawyer's failure to advise a defendant as opposed to those consequences that are merely collateral:

> When the ineffectiveness claim is based on alleged failure to advise a defendant on the consequences of a guilty plea, the rule is that, if the consequences flow "directly" from the plea, the plea may be held invalid. If, on the other hand, the fallout from the plea is "collateral," counsel is generally not held to be ineffective for failing to inform the defendant about it.

*Mott,* 407 N.W.2d at 582–83 (citation omitted).

In urging us to overrule *Mott,* Ramirez points to significant immigration law changes since *Mott.* Ramirez's argument is similar to the argument raised in the recent case of *State v. Martinez–Lazo,* 100 Wash.App. 869, 999 P.2d 1275 (2000), in which the court stated:

> [The defendant] acknowledges the general rule in [this state] that deportation is a collateral consequence, but argues that deportation is no longer a collateral matter due to changes to the Immigration and Naturalization Act (INA) ushered in by the Antiterrorism and Effective Death Penalty Act, Pub.L. No. 104–132, 110 Stat. 1214 (1996) (AEDPA), and the Illegal Immigration Reform and Immigrant Responsibility Act, Pub.L. No. 104–208, 110 Stat. 3009–546 (1996) (IIRIRA). In view of these changes, [the defendant] contends his deportation is certain, and therefore no longer a collateral consequence.

---

**3.** We do not have before us the lawyer's version of these proceedings, and we merely accept Ramirez's argument that he was not advised of possible deportation issues.

*Id.* at 1279 (footnote omitted). Ramirez also contends these changes, together with increased immigration enforcement, renders deportation a direct rather than a collateral result, thus abrogating the holding of *Mott.* He argues that, "after the 1996 immigration reform, a trial judge now does have control over deportation." He argues: "Deportation is a criminal punishment. It is a direct result of a guilty plea and is a criminal punishment."

Ramirez thus equates "certainty" of a sanction with the "directness" of the sanction, which is only half the test we have applied. We have said there must be a "definite, immediate and largely automatic effect *on the range of defendant's punishment.*" *State v. Carney,* 584 N.W.2d 907, 908 (Iowa 1998) (emphasis added). In *Carney* the defendant contended his guilty plea to OWI was invalid because he was not informed he faced revocation of his driver's license. Iowa Code section 321J.4(3)(a) (1995) provided:

> Upon a plea or a verdict of guilty of a third or subsequent violation of section 321J.2, the court shall order the department to revoke the defendant's motor vehicle license or nonresident operating privilege for a period of six years....

In *Carney* we held that, although revocation was mandatory and automatic, it was still a collateral consequence of the conviction because it did not have an effect "on the range of defendant's punishment." *Carney,* 584 N.W.2d at 909. Similarly, deportation does not have an effect "on the range of defendant's punishment" as far as the State of Iowa is concerned, "because it is not the sentence of the court which accepts the plea but of another agency over which the trial judge has no control and for which he has no responsibility." *Martinez–Lazo,* 999 P.2d at 1279.

Deportation, which as in this case may result in separation of families,[4] certainly carries the sting of punishment. As the Indiana Court of Appeals observed:

> Deportation may be a penalty more severe than a prison sentence. Deportation may result in families being divided or in "loss of property or life; or of all that makes life worthwhile." *Ng Fung Ho v. White,* 259 U.S. 276, 284, 42 S.Ct. 492, 495, 66 L.Ed. 938 (1922). It has been called "a savage penalty," "a life sentence of exile." *Jordan v. De George,* 341 U.S. 223, 243, 71 S.Ct. 703, 714, 95 L.Ed. 886 (1951) (Jackson, J., dissenting).

*Williams v. State,* 641 N.E.2d 44, 49 (Ind. Ct.App.1994).

◼ The Arizona Court of Appeals recently wrote:

> [W]e recognize that the majority of the courts that have considered this issue have held that the failure of defense counsel to inform non-citizen defendants about the collateral deportation consequences that result from entering guilty pleas does not constitute ineffective assistance of counsel. *See Tafoya v. State,* 500 P.2d 247, 252 (Alaska 1972) ...; *State v. Casseus,* 513 So.2d 1045 (Fla. 1987); *Mott v. State,* 407 N.W.2d 581, 583 (Iowa 1987); *State v. Chung,* 210 N.J.Super. 427, 510 A.2d 72, 76–77 (App. Div.1986); *State v. Dalman,* 520 N.W.2d 860, 863–64 (N.D.1994); *State v. McFadden,* 884 P.2d 1303, 1305 (Utah App. 1994); *United States v. Santelises,* 509 F.2d 703, 704 (2d Cir.1975); *United States v. Yearwood,* 863 F.2d 6, 7–8 (4th Cir.1988); *United States v. Gavilan,* 761 F.2d 226, 228–29 (5th Cir.1985); *Santos v. Kolb,* 880 F.2d 941, 944 (7th Cir.1989)

4. Ramirez married a United States citizen and has four United States' citizen children, ages six, five, and twins age three.

...; *United States v. Campbell*, 778 F.2d 764, 768 (11th Cir.1985).

*Rosas*, 904 P.2d at 1247. The Arizona court continued:

> [W]e recognize that some states have imposed the duty to inform non-citizen defendants about the deportation consequences that result from entering a guilty plea. Nevertheless, *such provisions have been enacted by statute or rule* ....

*Id.* (emphasis added). Iowa, as yet, has no rule or statute imposing a duty to inform aliens about deportation consequences. It is true we recently stated in dicta that, "[w]hen representing a foreign national criminal defendant, counsel has a duty to investigate the applicable national and foreign laws." *Ledezma v. State*, 626 N.W.2d 134, 152 (Iowa 2001) (citing *Strickland v. Washington*, 466 U.S. 668, 690, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674, 695 (1984)). However, we were careful to reserve judgment on whether counsel rendered ineffective assistance by failing to inform a foreign-national defendant of the right to consular access. Rather, we stated foreign nationals *should* be advised of that right, *Ledezma*, 626 N.W.2d at 150, 152, and we accordingly state here that foreign-national defendants *should* be apprised of all applicable federal laws, especially federal deportation consequences of state guilty pleas.

The Michigan Court of Appeals in *People v. Davidovich*, 238 Mich.App. 422, 606 N.W.2d 387 (1999), *aff'd*, 463 Mich. 446, 618 N.W.2d 579 (2000), discussed the issue of ineffective assistance of counsel and disapproved its prior case of *People v. Kadadu*, 169 Mich.App. 278, 425 N.W.2d 784 (1988) (holding it was not an abuse of discretion to allow withdrawal of a guilty plea when defendant was not informed of the deportation consequences of such a plea). The *Davidovich* court stated:

Although we acknowledge that deportation is a severe collateral consequence, we cannot conclude that it warrants treatment as a direct consequence of a plea. Deportation is only one possible collateral consequence of a guilty plea....

> Collateral consequences of a guilty plea are many. They may include the loss of civil service employment, of the right to vote and to travel freely abroad, of the right to a driver's license, and of the right to possess firearms.

606 N.W.2d at 390 (quoting *United States v. Del Rosario*, 902 F.2d 55, 59 (D.C.Cir. 1990) (citations omitted)); *see also Mott*, 407 N.W.2d at 583 (citing other consequences found to be collateral under Iowa law); Wright § 173, at 191–94 (listing serious, nevertheless collateral, consequences, including increased punishment on reoffending, revocation of an existing parole, and consideration of the current offense as a predicate for a federal RICO prosecution).

*Davidovich* rejected a special status for deportation consequences based on the unusual severity of deportation:

We discern no principled distinction between the immigration consequences of a plea and these other collateral consequences.... As the United States Supreme Court noted in *United States v. Timmreck*, 441 U.S. 780, 784, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979):

> "Every inroad on the concept of finality undermines confidence in the integrity of our procedures; and, by increasing the volume of judicial work, inevitably delays and impairs the orderly administration of justice. The impact is greatest when new grounds for setting aside guilty pleas are approved because the vast majority of criminal convictions result from such

pleas...." [Quoting *United States v. Smith,* 440 F.2d 521, 528–529 (C.A.7, 1971) (Stevens, J., dissenting).]

We realize deportation is a much more severe sanction than the defendant anticipated receiving, and defendant's motion to withdraw his plea carries a certain intuitive appeal....

[However,] [t]o the extent that the trial court might be trying to save defendant from deportation, its efforts are misguided. The Congress, through its legislation, decides which crimes merit deportation. As we discussed above, deportation is a collateral consequence of defendant's conviction. It is the fulfillment of a federal immigration policy, and it is unrelated to the trial court's inquiry. The trial court's only concern is whether defendant committed the charged crime and whether the plea was entered knowingly and voluntarily. Trial courts should not attempt to aid defendants in circumventing the deportation process because they believe deportation is too harsh a consequence for the crime committed. Those sorts of considerations belong to the Immigration and Naturalization Service, its administrative courts, and the federal court system.

*Davidovich,* 606 N.W.2d at 391–92 (footnote omitted) (first alteration in original).

We decline to overrule *Mott.* We repeat what we said there:

While there is some merit in the argument that deportation is such a serious consequence of the plea that it is more akin to a direct result, we adhere to our rule that failure to advise a defendant concerning collateral consequences, even serious ones, cannot provide a basis for a claim of ineffective assistance of counsel.

*Mott,* 407 N.W.2d at 583. We accordingly affirm.

**AFFIRMED.**

SNELL, S.J.,* participates in lieu of STREIT, J., who takes no part.

---

* Senior Judge assigned by order pursuant to Iowa Code section 602.9206 (2001).